**CENTURY CELLUNET OF SOUTHERN MICHIGAN, INC., a Delaware Corporation; General Partner for Century Cellunet of Southern Michigan Cellular Limited Partnership; and Janet Rosema, an Individual, Plaintiffs,**

v.

**CITY OF FERRYSBURG, a Municipal Corporation, Defendant.**

No. 4:96 CV 232.

United States District Court, W.D. Michigan, Southern Division.

Nov. 10, 1997.

---

James W. Porter, Reed, Stover & O'Connor, PC, Kalamazoo, MI, for Plaintiffs.

Michael S. Bogren, Plunkett & Cooney, PC, Kalamazoo, MI, for Defendant.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on plaintiffs' motion and defendant's cross-motion for summary judgment under Federal Rule of Civil Procedure 56(c). Plaintiffs filed this action pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 332(c), and pursuant to other federal and state constitutional and statutory authority. Plaintiffs alleged that Defendant City of Ferrysburg ("Ferrysburg") wrongfully prohibited the erection of the new cellular transmission tower. Plaintiffs then moved for summary judgment only on their claims under the Telecommunications Act of 1996 and Article VI, section 28 of the Michigan Constitution. Defendant countered by filing a cross-motion for summary judgment only on plaintiffs' Telecommunications Act of 1996 claim. Defendant alleged that the decision to prohibit the erection of plaintiffs' tower fully comports with the requirements of the Telecommunications Act of 1996. For the reasons which follow, defendant's motion is granted and plaintiffs' motion is denied.

## FACTS

The parties prepared and stipulated to a "Record on Appeal" which states the facts as follows: In 1995, Century Cellunet began receiving complaints of poor reception and loss of calls in and around Ferrysburg. Century Cellunet's engineers determined that a new 230 to 250 foot cellular tower would have to be built to close gaps in service. In June 1996, plaintiffs' representatives met with the Ferrysburg Planning Commission ("FPC") to discuss the construction of a proposed cellular tower within the Industrial Warehouse District. During the discussion, the FPC suggested Century Cellunet consider other sites, all of which were outside of Ferrysburg. Century Cellunet investigated these alternate sites and determined they were not feasible.

In August 1996, after the City Manager issued an interpretation of a City Ordinance that would not allow cellular towers over 50

feet within the Industrial Warehouse District unless a variance was granted, Century Cellunet requested hearings before the Zoning Board of Appeals ("ZBA") and the FPC. On October 3, 1996, a hearing was held by the FPC in which strong opposition was voiced by the public and the FPC members to Century Cellunet's proposed tower. The FPC refused to amend zoning laws in the Industrial Park or the Industrial Warehouse Districts. The FPC also voted unanimously to deny Janet Rosema's request for rezoning. It was on Rosema's property that Century Cellunet wanted to place the new tower.

On October 10, 1996, a hearing was held by the ZBA. The ZBA found that cellular towers were within the definition of section 8.35 which allows radio and television towers. Further, the ZBA found that cellular towers were permitted in the Industrial Warehouse District subject to special approval of the FPC. However, in deciding a request for special approval to install a cellular tower, under section 8.435, the FPC was to give due regard to the effect upon public safety or health, and the harmonious relations of such installation with regard to the surrounding land and buildings. The ZBA also stated that height restrictions only referred to buildings and not structures. Since the cellular tower was a structure under section 3.25, it was not subject to building height restrictions.

With the findings of the ZBA, Century Cellunet again requested a hearing with the FPC to get special approval for the new tower. Prior to the hearing, Century Cellunet provided the FPC with a site plan for the proposed tower detailing the lighting and the building area. The tower was to be lighted with white flashing lights during the day, and red lights at the top and middle. The 105.5 foot by 214 foot parcel was in the Industrial Warehouse District and in a nonresidential area. The FPC was also provided with the standard of review for Century Cellunet's proposal by the City Attorney, and the minutes of the ZBA meeting.

On November 7, 1996, the FPC held a hearing to consider Century Cellunet's proposed tower once more. One of the many concerns expressed by the FPC members was, in the event of a failure, how would the tower fall. Without providing supporting documentation, Century Cellunet representatives explained that the tower would not fall erect but, it would buckle and fold upon itself. Representatives added that the tower was designed for an 85–mph wind with a half-inch of ice. Thus, the representatives believed the tower would not fail and if it did, it would not affect surrounding properties. Century Cellunet further stated that if damage resulted to surrounding properties, it had insurance to cover the loss.

The FPC members also questioned why the tower was planned for a low area (referring to elevation). Representatives explained that the only way to get a signal into the low area was to put a tower at the bottom of the low area. If the tower was not permitted to be located in the low area, a taller tower would have to be built. However, this taller tower in another location might not be as effective. Another issue raised was the safety of trespassers. Representatives stated that the tower and equipment shed would be surrounded by a six-foot chain link fence with three strands of barb wire on top. If the FPC members felt more security was needed, Century Cellunet would provide it. Finally, representatives stated that they would be willing to share space on the tower with other users if Century Cellunet could get fair market value rent for the tower. Nevertheless, Century Cellunet's request for a special use permit was unanimously denied by the FPC.

Proposed Findings of Fact were drafted by the City Attorney and furnished to plaintiffs on December 5, 1996. Plaintiffs disagreed with the contents of the proposed findings. Among other objections, plaintiffs objected to the lack of reference to Century Cellunet's discussion regarding disguising the tower. On January 9, 1997, the FPC met and discussed the proposed findings. At the meeting, the FPC added information to the findings without referring to the FPC hearing transcripts or tapes which were provided. A sentence was added stating Century Cellunet had not "adequately addressed the possibility of disguising the tower." The matter of adopting the findings was tabled by the FPC

until February 6, 1997. The FPC then had a closed session meeting to discuss the findings. At the February 6, 1997 meeting, the FPC unanimously adopted the Findings of Fact with the additions made at the January 9, 1997 meeting and denied the special use permit.

The FPC made the following Findings of Fact:

[(1)] The proposed tower would sit upon a 105.5 foot by 214.5 foot parcel. The tower would be located 45 feet from the easterly border of the parcel. The tower would be constructed so that in the event of a failure it would collapse or fold rather than fall as a straight structure. The Applicant would not give reasonable assurances that, in such an event, the collapse or folded tower would not fall upon adjoining parcels. The Planning Commission finds that the tower would pose an unreasonable risk to the adjoining properties.

[(2)] The Applicant did not adequately address the possibility of disguising the tower as requested by the Planning Commission.

[(3)] The proposed tower would be located near the center of the City and would be visible from residences. The Planning Commission finds that the tower would not be in harmony with the existing areas that will view it or with residences that would adjoin it.

[(4)] While the Applicant would prefer the proposed location, the Planning Commission finds that there are other locations that would provide adequate cellular service. Depending upon its design, a tower may be less visually objectionable if it was located northeast of the proposed location in the Industrial Park District. There may be larger parcels available in the Industrial Park District.

[(5)] The Applicant and competitor currently provide adequate service to the community. The Planning Commission finds that the denial of the application would not prohibit or have the effect of prohibiting cellular service.

(Def.'s Mot. for Summ. J. at 12)

Plaintiffs filed this action on December 6, 1996, pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 332(c), and pursuant to other federal and state constitutional and statutory authority. Plaintiffs alleged that defendant wrongfully prohibited the erection of the new tower. On May 19, 1997, plaintiffs moved for summary judgment on the Telecommunications Act of 1996 and Article VI, section 28 of the Michigan Constitution claims. On June 16, 1997, defendant moved for summary judgment on the Telecommunications Act of 1996 claim. Defendant alleged that the decision to prohibit the erection of plaintiffs' new tower fully comports with the requirements of the Telecommunications Act of 1996. This Opinion addresses both motions.

## DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *City Management Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir.1994). The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrates the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* (quoting *Anderson,* 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court "cannot resolve issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987).

### B. Telecommunications Act of 1996 Claim

■ Title 42 United States Code, section 1983 "confers a private federal right of action for damages and injunctive relief against state actors ...." *Burnett v. Grattan,* 468 U.S. 42, 45 n. 2, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). To state a claim under this section, "a plaintiff must establish: (1) that he [or she] was deprived of a right secured by the Constitution or laws of the United States, and (2) that he [or she] was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton,* 38 F.3d 282 (6th Cir.1994) (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Defendant disputes the first element-whether its conduct violated plaintiffs' rights under the Telecommunications Act of 1996.

The Telecommunications Act of 1996 states, in part, under the section entitled "Preservation of local zoning authority" as follows:

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7). Plaintiffs allege that the FPC's decision is not supported by substantial evidence contained in a written record, and that the FPC's decision prohibits or has the effect of prohibiting the provision of personal wireless services.

### 1. Substantial Evidence

Section 332(c)(7)(B)(iii) requires that any decision to deny a request to place a personal wireless service facility within a municipality be "in writing and supported by substantial evidence contained in a written record." The "substantial evidence" required under section 332(c)(7)(B)(iii) is the same as required in judicial review of agency decisions. *See Bell-South Mobility Inc. v. Gwinnett County*, 944 F.Supp. 923, 929 (N.D.Ga.1996); *see also* H.R. Conf. Rep. No. 104–458, at 445–48 (1996). The Sixth Circuit defined the term "substantial evidence" as follows:

> [s]ubstantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of our review is limited to an examination of the record only. We do not review the evidence de novo, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health and Human Serv.*, 889 F.2d 679, 681 (6th Cir.1989).

 In reviewing an agency decision, the Court must affirm the decision if it is supported by substantial evidence, even if the Court would decide the matter differently. *Kinsella v. Schwelker*, 708 F.2d 1058, 1059 (6th Cir.1983). Moreover, the Court must also affirm a decision supported by substantial evidence even if the applicant's position is supported by substantial evidence. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (en banc). The burden of proof of showing a decision is not supported by substantial evidence rests with the party seeking to overturn the decision of the agency. *Barwacz v. Michigan Dep't of Educ.*, 674 F.Supp. 1296, 1302 (W.D.Mich.1987).

 In this case, the FPC's decision is supported by substantial evidence in at least two areas. First, the FPC found that the tower would pose an unreasonable risk to adjoining properties. The tower was to be over 230 feet tall and would sit upon a 105.5 foot by 214 foot parcel. Century Cellunet provided no documentation to support its assertion that the tower would crumble and fall upon itself, rather than fall erect. If the tower were to fail and fall erect, surrounding properties would be affected. Thus, the FPC's "unreasonable risk" finding was supported by substantial evidence.

Second, the FPC found that the tower would not be in harmony with the existing areas that will view it or with residences that would adjoin it. The tower was to be over 230 feet tall. Also, the tower was to be lighted with white flashing lights during the day, and red lights at the top and middle. Since Ferrysburg is a small city, the land surrounding the tower would be the whole city. None of the buildings or structures surrounding the tower are alleged to be over 230 feet tall with flashing lights. Thus, the FPC's finding, regarding the harmony with the existing areas, was supported by substantial evidence. Accordingly, plaintiffs fail to show that the FPC's decision was not supported by substantial evidence.

### 2. Effect on the Provision of Personal Wireless Services

 Section 332(c)(7)(B)(i)(II) requires that any regulatory decision made by State or local governments may not "prohibit or have the effect of prohibiting the provision of personal wireless services." However, Ferrysburg already has two cellular providers that service the area namely, Cellular One and Century Cellunet. Century Cellunet sought to build the new tower to improve service, not to create service where none previously existed. Century Cellunet admitted that a tower taller than the one proposed could be built in another location. Thus, other options remain available for Century Cellunet to provide improved service to its customers. Therefore, Century Cellunet has not shown that the FPC's decision either prohibited or had the effect of prohibiting the provision of personal wireless services. Accordingly, defendant's motion as to this federal law claim against Ferrysburg is granted and plaintiffs' motion is denied.

**1078**

### C. Michigan Constitution Claim

 Article VI, section 28 of the Michigan Constitution requires that the agency decision be supported by competent material and substantial evidence. Mich. Const., art. VI § 28;[1] *Gordon v. Bloomfield Hills,* 207 Mich.App. 231, 523 N.W.2d 806, 807–08 (1994); *Michigan Employment Relations Comm'n v. Detroit Symphony Orchestra, Inc.,* 393 Mich. 116, 223 N.W.2d 283, 287–89 (1974). The Court should uphold an agency decision if it is supported by such evidence as a reasonable mind would accept as adequate to support the decision. *Gravely v. Pfizer, Inc.,* 170 Mich.App. 262, 427 N.W.2d 613, 615 (1988). However, the Court must give deference to the agency's regulatory expertise and not invade the province of the administrative fact finding agency. *Gordon,* 523 N.W.2d at 807. The substantial evidence standard applied in zoning decision cases is the same as any other administrative decision. *See Keating Intern. Corp. v. Orion County,* 395 Mich. 539, 236 N.W.2d 409, 411 (1976).

Plaintiffs cite *Keating Intern. Corp.* to show that denial of site plan approval may violate Article VI, section 28 of the Michigan Constitution. *See* 236 N.W.2d at 409. However, the facts of *Keating Intern. Corp.* differ importantly from this case. In *Keating Intern. Corp.,* the record was devoid of competent material and substantial evidence which would justify the township's rejection of site plan approval. *See* 236 N.W.2d at 412. Here, as discussed earlier, defendant has established that the decision to deny plaintiffs' special use permit was supported by substantial evidence. This substantial evidence was listed to support the FPC's findings and, therefore, material to the FPC's decision. A reasonable mind would accept this substantial evidence concerning safety and harmony with the surrounding areas as adequate to support the decision. Accordingly, plaintiffs' summary judgment motion on the claim under Article VI, section 28 of the Michigan Constitution is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion is granted and plaintiffs' motion is denied as stated in this Opinion. The Court further determines defendant is entitled to summary judgment on plaintiffs' claim for relief under the Telecommunications Act of 1996. Plaintiffs' other federal and state claims are left undisturbed.

---

1. Article VI, section 28 of the Michigan Constitution provides, in part, as follows:

   All final decisions, findings, rulings and orders of any administrative officer or agency existing under the Constitution or by law, which are judicial or quasi-judicial and effect private rights or licenses shall be subject to direct review by the courts as provided by law ... this review shall include as a minimum the determination of whether ... the same are supported by competent material and substantial evidence on the whole record.
   Mich. Const., art. VI § 28.