CELLULAR TELEPHONE COMPANY, d/b/a AT & T Wireless Services, Plaintiff,

v.

BOARD OF ADJUSTMENT OF THE BOROUGH OF PARAMUS, Defendant.

No. Civ. 97–3082(DRD).

United States District Court, D. New Jersey.

Jan. 27, 1999.

Thomas F. Campion, Robert M. Vinci, Shanley & Fisher, P.C., Morristown, NJ, for plaintiff.

Brian Thomas Giblin, Giblin & Giblin, P.C., Oradell, NJ, for defendant.

## OPINION

DEBEVOISE, Senior District Judge.

A licensed provider of wireless cellular telephone services brought this action against a municipality's board of adjustment claiming that the board's denial of the provider's application for variances to construct a wireless telecommunications facility in a residential zone violated the Telecommunications Act of 1996 and New Jersey state law. The provider, Cellular Telephone Company, d/b/a AT & T Wireless Services ("AT & T"), and the municipality's board, the Board of Adjustment of the Borough of Paramus (the "Board"), have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. Oral argument was heard on January 25, 1999. For the reasons set forth below, AT & T's motion for summary judgment will be granted, and the Board' cross-motion denied.

## I. BACKGROUND

AT & T is licensed by the FCC to provide wireless communications to the Paramus, New Jersey area. *See* Vinci Aff., Exhibit A, October 3, 1996, hearing transcript, at 8–9; Complaint ¶ 8; Answer ¶ 8. Because of gaps in coverage in AT & T's wireless network in and around Paramus, AT & T sought to locate a new wireless service facility in Paramus to meet the needs of its current and future customers.

### A. The Need for the Proposed Site

AT & T identified an area in Paramus, particularly along Paramus and Century Roads, as an area with particular wireless telephone service deficiencies (the "Paramus Road Coverage Gap"). *See* Complaint ¶ 20; Answer ¶ 20. In this area, a handheld portable phone user will experience static on the line, garbled voices, and a drop in quality far below the service that AT & T is attempting to offer. *See* Vinci Aff., Exhibit A, October 3, 1996, hearing transcript, at 16. To fill this coverage gap AT & T found it necessary to locate a new cell site in the area. *See* Complaint ¶ 21; Answer ¶ 21.

The proposed wireless service facility, or "cell site", would be part of an integrated cellular-system designed to minimize service deficiencies. Through implementation of the Paramus site, AT & T sought to maximize the use of its FCC-licensed frequencies by operating a cellular network using a honeycomb-like pattern of separate areas called "cells." *See* Vinci Aff., Exhibit A, October 3, 1996, hearing transcript, at 11–14, 75–76, 78–79. This site would allegedly have provided uninterrupted service and would alleviate the coverage gap that existed in the Paramus area.

### B. The Proposed Site

Using specialized communications testing equipment, AT & T found property in Paramus on which a cell site could be located to alleviate the Paramus Road Coverage Gap. *See* Complaint ¶ 22; Answer ¶ 22. The property, located at 293 Paramus Road, is owned by Stephenson Associates (the "Stephenson Property"). *Id.* AT & T entered into a lease with Stephenson Associates for a small portion of the property. *Id.* ¶ 23.

Although the Stephenson Property is located in an area zoned "residential," the property is currently occupied by the Paramus Tire Company, a commercial retail and automotive repair business. *Id.* The balance of the property is primarily a paved parking lot and driveway for the tire company. *See* Vinci Aff., Exhibit B, January 9, 1997, hearing transcript, at 11.

AT & T proposed installing an eighty-one foot cellular telephone monopole and a prefabricated twelve by twenty foot equip-

ment shelter for the related computerized switching equipment. *See* Complaint ¶ 24; Answer ¶ 24. The monopole would be located behind an existing guardrail at the rear of the Paramus Tire Company parking lot. *See* Vinci Aff., Exhibit B, January 9, 1997, hearing transcript, at 11. The site would be protected by a chain.link fence, surfaced with gravel to minimize the necessary maintenance within the fenced area and landscaped with several new pine trees adjacent to the fence to help screen the facility from view. *Id.*

The monopole itself would be constructed of galvanized steel and would have a width of approximately two feet at the base and approximately one foot at the top. *Id.* at 13. It would be supported by a reinforced concrete foundation extending fifteen to twenty feet into the ground. *Id.* at 14. The monopole would hold three low-profile antennae attached close to the pole and extending down the pole, each of which would be twelve inches wide and eight feet long. *Id.* at 13.

The facility would not have any general lighting that could cause a disturbance. *Id.* at 14. Lighting would only be installed adjacent to the equipment shelter door, and operated by a motion detector, to provide light on the shelter's stairway if necessary for maintenance. *Id.* The facility would also be unmanned, but monitored remotely twenty-four hours a day. *Id.* at 12, 17–18. The site would be visited by a technician only once or twice a month. *See* Vinci Aff., Exhibit A, October 3, 1996, hearing transcript, at 36–37.

## C. The Search for Other Possible Sites

Before deciding that it would have to install a monopole, AT & T attempted to locate the necessary antennae on an existing structure. *Id.* at 18. AT & T also considered all alternative sites that might serve to fill the Paramus Road Coverage Gap. *Id.* In all, AT & T considered eight other possible sites. *Id.* at 19–28. These included five existing structures and three sites that would have required the installa-

tion of a monopole. *Id.* None of these sites, however, were viable either because the property owner was unwilling to lease space to AT & T, or because the site did not satisfy the engineering criteria. *Id.* AT & T also searched for any possible sites on which it could co-locate, with another carrier, the needed antennae, but no such site was available. *Id.* at 29. Only the Stephenson Property satisfied the engineering criteria to fill the Paramus Road Coverage Gap and was available for lease by AT & T.

## D. The Application

The Stephenson Property is located in an R–100 residential zone. *See* Complaint, ¶ 25; Answer ¶ 25. Under section 429–43 of the Borough Zoning Ordinances, the proposed telecommunications facility is not a permitted use. *Id.* Accordingly, AT & T filed an application for use variance relief, in addition to site plan approval (the "Application"). *Id.*

The Borough Zoning Officer thereafter determined that the Borough would require a number of other variances. *Id.* AT & T complied with this finding and also applied for a variance for more than one principal use per site, a variance for height in excess of the thirty-two foot limit, a variance for minimum rear yard of less than thirty feet, a variance for less than a twenty-five foot buffer to adjacent residential properties, and a variance for impervious coverage of over fifty percent. *Id.*

## E. The Hearings and Denial of the Application

The Board conducted three hearings on the Application on October 3, 1996, January 9, 1997, and March 20, 1997. The public hearings culminated in a March 20, 1997, vote by the Board to deny AT & T's Application. *See* Complaint ¶ 40; Answer ¶ 40. About two months later, on May 15, 1997, the Board adopted a resolution memorializing its decision (the "Resolution"). *Id.* at ¶ 41; Vinci Aff., Exhibit F.

In its Resolution, the Board of Adjustment concluded that a one percent increase of impervious coverage "would create a substantial overutilization of the site," the requested variances relating to insufficient rear yard setback and minimum buffer requirements would also result in the overutilization of the property, AT & T "failed to provide competent proofs that there would be no increased run off from the site due to the additional impervious coverage," the "aesthetic impact of the monopole and building is in conflict with the surrounding residential uses and would detract from the character and appearance of the area," and AT & T "failed to provide sufficient proofs that the monopole and antennas would not create a hazard in high winds and endanger nearby residents." *See* Vinci Aff., Exhibit F ¶¶ 3–7. AT & T filed this lawsuit on June 13, 1997.

## II. DISCUSSION

Both AT & T and the Board have moved for summary judgment. AT & T seeks an injunction instructing the Board to approve its application. In support of this request, AT & T argues that the Board, when it denied the application, did not base its decision on "substantial evidence." Additionally, AT & T argues that the denial of its application violated the Federal Telecommunications Act of 1996 (the "TCA") in that it had the effect of prohibiting wireless services. Finally, AT & T argues that the Board's denial of its application was a violation of New Jersey state law. The Board seeks an order upholding its decision to deny AT & T's application. The Board argues that it did not violate the TCA or state law and that its decision was based on substantial evidence.

### A. Jurisdiction

Federal courts do not generally second-guess or otherwise interfere with the decisions of local zoning boards. *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus*, 24 F.Supp.2d 359, 364 (D.N.J.1998). With the amendment of the Federal Telecommunications Act in 1996, however, limited substantive and procedural restrictions were placed upon state and local government regulation of personal wireless service facilities. *Id.* With respect to the enforcement of these provisions, the TCA states that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may ... commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). This Court, therefore, has jurisdiction, pursuant to 28 U.S.C. § 1331, to evaluate the Board's compliance with the TCA. *Cellular Tel. Co.*, 24 F.Supp.2d at 364.

### B. Summary Judgment Standard

The Court may grant summary judgment when, drawing all inferences in favor of the non-moving party, the pleadings, supporting papers, affidavits, and admissions on file, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 n. 3 (3d Cir.1994); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (in banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The Court's function is not to weigh the evidence and discern the truth of the matter, but to determine whether there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Petruzzi's IGA v. Darling–Delaware*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993). An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d

Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). A fact is material if it influences the outcome of the action under the governing substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the burden of establishing that there are no genuine issues of material fact for trial regardless of who bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, as Plaintiff does here, the moving party may satisfy its burden on a motion for summary judgment by showing that the non-moving party has failed to adduce evidence sufficient to establish an essential element that the non-movant would have to prove at trial. *Id.*

Once that burden is met, the non-moving party "may not rest upon the mere allegations" of its complaint to raise a genuine issue of fact, but must submit evidence specifically showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Robin Const. Co. v. United States,* 345 F.2d 610, 614–15 (3d Cir.1965). If the party opposing the motion fails to do so, the "factual record will be taken as presented by the moving party and judgment will be entered as a matter of law." *United States v. City of Hoboken,* 675 F.Supp. 189, 192 (D.N.J.1987).

If the Court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, then summary judgment may be granted.

## C. Decision Based on Substantial Evidence

AT & T main argument is that the Board's decision was not supported by substantial evidence and thus was violative of the TCA.

### 1. The TCA and New Jersey Zoning Decisions

█ The TCA states that "[a]ny decision by a State or local government or instrumentality [ ] to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence." 47 U.S.C. § 332(c)(7)(B)(iii). The substantial evidence standard " 'is the traditional standard used for judicial review of agency actions.' " *Cellular Tel. Co.,* 24 F.Supp.2d at 365 (quoting H.R.Conf.Rep. No. 104–458, at 445–48 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 223); *see also Century Cellunet of Southern Michigan, Inc. v. City of Ferrysburg,* 993 F.Supp. 1072, 1077 (W.D.Mich.1997).

In the context of review of agency decisions, substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (clarifying that a "large or considerable amount of evidence" is not required); *Alexander v. Shalala,* 927 F.Supp. 785, 791 (D.N.J.1995) (defining substantial evidence as "more than a mere scintilla, but may be less than a preponderance"), *aff'd,* 85 F.3d 611 (3d Cir.1996). Under this definition, a court may not displace an agency's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *NLRB v. Greensburg Coca–Cola Bottling Co., Inc.,* 40 F.3d 669, 673 (3d Cir.1994) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Likewise, in the context of the TCA, the board's decision must be affirmed "even if the court would decide the matter differently." *Century Cellunet,* 993 F.Supp. at 1077; *see also AT & T Wireless PCS, Inc.*

v. *City Council of the City of Virginia Beach*, 155 F.3d 423, 430 (4th Cir.1998); *Cellular Tel. Co.*, 24 F.Supp.2d at 366.

█ That having been said, however, all evidence must have been considered by the Board, adequate explanations for rejecting relevant evidence must have been provided, and the Board's decision must have been "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981); *see also Cellular Tel. Co.*, 24 F.Supp.2d at 366. Thus, while the Board's decision is afforded deference with the burden on AT & T to overturn that decision, *Century Cellunet*, 993 F.Supp. at 1077, this court must scrutinize the entire record and determine whether the decision is rational and supported by substantial evidence. *Cellular Tel. Co.*, 24 F.Supp.2d at 366.

█ The TCA explicitly preserves local zoning authority unless the local or state government or instrumentality unreasonably discriminates against providers of personal wireless service, prohibits the provision of such service, or regulates the placement of wireless service facilities on the basis of the environmental effects of radio frequency emissions if the emissions comply with the Commission's regulations. *See* 47 U.S.C. § 332(c)(7)(B)(I) and (iv). The requirement of the TCA that a denial by a state or local government or instrumentality be in writing and based upon substantial evidence, however, "does not affect or encroach upon the substantive standards to be applied under established principles of state and local law." *AT & T*

*Wireless Services of Florida, Inc. v. Orange County*, 994 F.Supp. 1422, 1426 (M.D.Fla.1997); *see also Cellular Tel. Co.*, 24 F.Supp.2d at 366. "The purpose of this requirement is to facilitate review and to assure that decisions are not made arbitrarily or without sufficient justification." *Cellular Tel. Co.*, 24 F.Supp.2d at 366.

█ In the case at bar, an application was made to the Board for variances from Paramus's zoning ordinance to permit the construction of a monopole and one accompanying building. Because the operation of a monopole in a residential neighborhood would be a conditional use under the zoning ordinance, the Board determined that a variance for such a use was necessary. In order to meet the standard for a conditional use variance, an applicant is required to present to the Board both the positive and negative aspects of their project. *See, e.g.*, N.J.S.A. 40:55D–70d(3). The positive criteria required are those that generally establish the "special reasons" for the variance. *Cellular Tel. Co.*, 24 F.Supp.2d at 366. The negative criteria required is proof that the variance can be granted " 'without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.' " *Id.* at 366–67 (quoting N.J.S.A. 40:55D–70d).

█ The positive and negative criteria are evaluated differently depending on whether the proposed use of the property is "inherently beneficial." *Id.* at 367. Because the Board found that the building of a monopole by AT & T in this area was an inherently beneficial use,[1] AT & T's "bur-

1. At the time the Board denied AT & T's application, it was settled law in New Jersey that mobile communication facilities which require monopoles were automatically inherently beneficial uses. *See Smart SMR of New York, Inc. v. Borough of Fair Lawn Board of Adjustment*, 152 N.J. 309, 311, 704 A.2d 1271 (1998). Subsequent to the denial, however, the New Jersey Supreme Court decided a case in which it held that these facilities *could be* but were not automatically inherently beneficial uses. *Id.* The Board now asks this Court to apply that case retroactively and impose on

AT & T the additional burden of proving "special reasons" for the variances. *See Burbridge v. Mine Hill Township*, 117 N.J. 376, 568 A.2d 527 (1990). Under New Jersey law, however, a court decision that establishes a new principle of law by overruling past precedent is prospectively applied. *Montells v. Haynes*, 133 N.J. 282, 295, 627 A.2d 654 (1993); *Coons v. American Honda Motor Co.*, 96 N.J. 419, 427, 476 A.2d 763 (1984), *cert. denied*, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). The Board's decision in this matter

den of proof is eased for the positive criteria are presumptively satisfied and the negative criteria are evaluated under a four-part balancing test." *Id.* (citing *Sica v. Board of Adjustment of the Township of Wall*, 127 N.J. 152, 165–66, 603 A.2d 30 (1992)). Under a *Sica* evaluation, the Board must identify the public interest at stake, identify the detrimental effect that will ensue from the grant of the variance, consider any reasonable conditions on the use which can be implemented to reduce the detrimental effect of the use and, finally, weigh these factors to determine whether the grant of the variance would cause a substantial detriment to the public good. *Sica*, 127 N.J. at 165–66, 603 A.2d 30; *Cellular Tel. Co.*, 24 F.Supp.2d at 367.

## 2. The Board's Decision

The Board determined that granting the variances that AT & T requested would cause a substantial detriment to the public good. After going through a *Sica* analysis, the Board concluded that AT & T failed to satisfy the negative criteria requirement. First, the Board stated that the proposed variances for impervious coverage and the addition of a monopole and building would create substantial overutilization of the site. *See* Defendant's Statement of Undisputed Facts ¶ 18. AT & T contends that this conclusion is unsupported by any evidence. Because the impervious coverage of the property would increase just one percent, AT & T argues that any conclusion that the additional coverage would produce "substantial overutilization" of the site is baseless and not substantiated by sufficient evidence.

Second, the Board stated that AT & T failed to demonstrate the need for the variances relating to insufficient rear yard setback and minimum buffer require-

ments. *Id.* AT & T contends that the Board, in reaching this conclusion, disregarded the facts presented by its expert witnesses. AT & T argues that it established during the hearings that the requested variances would not encroach upon any residential property. In fact, AT & T firmly contends that a variance would be appropriate because the cellular facility would abut another commercial property on the side and a county park to its rear.

Next, the Board concluded that AT & T did not provide competent proofs that there would be no increased run off from the site due to the additional impervious coverage. *Id.* Because the Board did not submit any evidence or expert testimony to support its conclusion, AT & T insists that the Board's conclusion with regards to the run off was based on nothing more than conjecture and speculation. In support of its argument, AT & T points to the extensive testimony of its expert Jeff Kirby who stated that the addition of the cellular site to the Stephenson Property would not create any problems with increased run off.

Furthermore, the Board determined that the aesthetic impact of the monopole and building was in conflict with the surrounding residential uses and would detract from the character and appearance of the area. *Id.* AT & T contests this finding and argues that the Board disregarded the facts of this case when making this conclusion. In support of its argument, AT & T points out that the cellular site would be a small addition to already present commercial and non-residential uses, that the station would be unmanned, and that the negative visual impact would be minimal.

Finally, the Board stated that AT & T failed to provide sufficient proofs that the

predated the *Smart SMR* decision by over six months. At the time AT & T filed its application, such facilities were considered inherently beneficial uses. AT & T's application was based upon such a premise and the Board accepted and made its decision pursuant to such a rule. With regards to this suit, AT & T's

application should be looked at under the prevailing case law at that time. The Board should be required to stand by its decision on the matter and AT & T should not be forced to submit further evidence. Accordingly, *Smart SMR* will not be applied retroactively in this case.

monopole and antennas would not create a hazard in high winds and endanger nearby residents. *Id.* AT & T argues that this is nothing more than impermissible speculation on the Board's part. Although the Board never requested testimony on this issue, AT & T provided evidence on the construction and strength of the monopole and the cellular facility. No contrary evidence was submitted by the Board.

### 3. Existence of Substantial Evidence

AT & T argues that the Board's conclusions were not based on substantial evidence and that the Board arbitrarily denied its application because it sought variances for a residentially zoned piece of property.[2] The crux of AT & T's argument is that the Board nevertheless denied its application after hearing extensive expert testimony in favor of the variances. AT & T insists that because the Board submitted no evidence to the contrary, the decision could not have been based on substantial evidence. The Board, however, argues that each variance was denied after careful consideration and the denials were based upon substantial evidence.

### a. Submitted Evidence

AT & T presented the testimony of three experts in support of its application. Neither the Board nor any citizen offered any evidence, expert or otherwise. *See* Complaint ¶ 30; Answer ¶ 30.

AT & T's first expert was Mark Brodsky ("Brodsky"), a Radio Frequency Engineer. Brodsky testified that the proposed wireless service facility was necessary and essential for AT & T's integrated cellular system. *See* Vinci Aff., Exhibit A, October 3, 1996 hearing transcript, at 6–17. Brodsky specifically testified that wireless service in the area was unacceptable, and that the best possible signal in the Paramus Road Coverage Gap area is ten to 100 times below the standard for handheld portable signal strength. *Id.* at 32. Brodsky further testified that the proposed site would be in full compliance with all applicable FCC standards. *Id.* at 37.

Brodsky also testified that the facility would operate on a unique frequency, far different from those used for radio or television, and, as such, would remove the potential for radio frequency interference to radio, television, or any other type of electronic use. *Id.*

Jeff Kirby ("Kirby") was AT & T's second expert witness. Kirby, a licensed professional engineer, testified that the construction and installation of the wireless service facility would meet and satisfy all applicable construction code regulations and would be functionally the same as numerous other existing monopole installations. *See* Vinci Aff., Exhibit B, January 9, 1997 hearing transcript, at 17, 18–19.

Kirby also testified that the equipment shelter would be raised above the ground to compensate for the site being located in a flood plain area. *Id.* at 13. Additionally, Kirby testified that the site would not require any water or gas service and would be served by standard electric ser-

---

**2.** AT & T contends that the comments made by some of the zoning board members during the public hearings voiced a predisposition to deny AT & T's application regardless of what the evidence showed. *See, e.g.,* Exhibit A, October 3, 1996, hearing transcript, at 86 (Board chairman stated that "[t]his is the wrong spot and the wrong neighborhood and this town is full of places to go"); *Id.* at 87–88 (Board chairman stated that "[t]his site is the wrong site to be at. That's all, just that simple and as far as the other witnesses coming up, they can clearly understand where I am coming from"); Exhibit B, January 9, 1997, hearing transcript, at 22 (Board chairman stated that "I don't want these [monopoles] in residential zones in Paramus, period"); *Id.* at 21 (Board chairman asked one of AT & T's witnesses "[w]ould you want one of these poles in your backyard?"). While these comments are troubling, the Court need not determine whether any member of the Board, or the entire Board, was predisposed to deny AT & T's application before hearing the evidence. As stated below, there is sufficient proof that the Board's decision was not based upon "substantial evidence" even without considering these statements.

vice and fairly ordinary telephone service, both of which would be fed underground from Paramus Road. *Id.* at 16.

Kirby further testified that the site would be protected by a specialized grounding system to protect the communications equipment and as required by the Code. *Id.* at 31. Kirby testified that the monopole would essentially protect the adjacent trees and residential structures from being hit by lightning. *Id.* According to Kirby, in the event of a lightning strike, the electrical energy from the lightning bolt would go into the grounding system and safely dissipate into the soil. *Id.* at 31–32.

In response to an inquiry by the Board's chairman, Kirby testified that there was no danger in having underground electric lines run in a flood plain area. *Id.* at 24. In response to an inquiry by another board member, Kirby testified that the equipment at the site would not contain any dangerous chemicals and could not create any problems in the event of flooding. *Id.* at 30–31. Finally, answering an inquiry by a member of the public, Kirby testified that the impervious coverage at the site would increase by only one percent. Kirby noted that the Paramus Tire Company building and paved area already created impervious coverage of eighty-three percent. *Id.* at 38. The addition of the proposed facility would increase that to eighty-four percent. *Id.* at 39.

AT & T's final expert witness, Janice Talley ("Talley"), a licensed professional planner, testified as to the planning considerations that AT & T analyzed in determining that the Stephenson Property was the only adequate site to meet the needs of its customers. Talley testified that the wireless service facility would be minimally detrimental to the public and adjoining residential area and would advance zoning purposes, promote the public good by improving telecommunications, and promoting efficient use of the land. *Id.* at 43–81.

Talley testified that she performed an analysis of the land use conditions of the area. *Id.* at 43. Although this area is zoned residential, it is dominated by commercial and public uses. For example, there is a restaurant located on one side of the Paramus Tire Company property, a golf course located directly across Paramus Road, and a church and cemetery are located to the south. *Id.* at 43. Several residences are also located to the south and a county park borders the property from behind. *Id.* In Talley's opinion, this is not a classic residential subdivision. *Id.* at 43–44. Talley concluded that the positive aspects of granting the application outweighed any potentially negative impact. *Id.* at 48–60.

In concluding so, Talley determined that the potential detrimental impacts associated with the use are minimal to none. This conclusion was based on a number of factors including that the facility would be unmanned, it would usually require only one short visit every several weeks for maintenance, it would not create any storm water drainage problems, and it would not generate any pollution. *Id.* at 48–49.

Talley testified that in her opinion, the only negative impact would be visual. *Id.* at 49. Using an exhibit produced to estimate the visual impact of the monopole in the winter and late-spring, however, Talley concluded that any negative visual impact would be minimal. *Id.* at 49–54. Additionally, even this negative impact could be reduced through use of the proposed "stealth" or low-profile pole and landscaping. *Id.* at 54–55. AT & T also offered to install a monopole that would look like a tree in order to almost completely negate any adverse visual impact. *Id.* at 55, 80–81. Moreover, the site would be located in the rear of the property next to a county open space area to further minimize the visual impact. *Id.* at 59.

Talley also testified that the proposed facility would advance the purposes of Paramus's planning because this is an appropriate location for a telecommunications

facility because it would be placed in an area currently used for commercial purposes and non-residential open space. *Id.* at 58. Finally, Ms. Talley concluded that a grant of the variances would result in better planning and more efficient use of the land. *Id.* at 61.

### b. Board's Decision

As previously stated, substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Alexander*, 927 F.Supp. at 791. While this standard is not difficult to meet, the Board must consider all evidence, must give adequate explanations for rejecting relevant evidence, and the decision must have been "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704; *see also Cellular Tel. Co.*, 24 F.Supp.2d at 366. After an extensive review of the entire record in this case, it is obvious that the Board failed to seriously consider the evidence submitted by AT & T, that the Board's decision was not based upon substantial evidence, and that it was arbitrarily reached.

■ The record as a whole does not support the Board's conclusions. First, the Board's determination that the addition of the monopole and accompanying building would create a substantial overutilization of the site is clearly unsupported by the evidence considered. The current impervious coverage of this Stephenson Property is eighty-three percent. Through expert testimony the Board learned that the addition of the monopole and the accompanying building would increase the impervious coverage only one percent to eighty-four percent. While impervious coverage of eighty-three percent of a parcel of land may be high, the Board did not see *any* evidence which showed that raising it one percent would result in "substantial overutilization." In fact, what the Board did when it reached this conclusion was disregard AT & T's expert testimony showing that no significant change in the impervious coverage would occur and

that there would be no increased runoff from the site due to the building, the pole, or the underground wiring. The denial of the variance on this ground was arbitrary at best.

■ Likewise, the Board's denial of the variances for rear and side yard setbacks are also unsupported by the evidence. Most municipal zoning ordinances in New Jersey require certain setbacks in the front, rear, and side yards of residential property in order to promote privacy and avoid clutter. *See, e.g., Bressman v. Gash*, 131 N.J. 517, 529, 621 A.2d 476, 483 (1993). Although AT & T sought to build the monopole on land currently occupied by a commercial use, these setback requirements were in effect because the land was located within a residential zone. AT & T sought a variance from the setback requirements of one side yard which bordered another commercial use and the back yard which bordered a county park. The Board denied these variances based on a similar "overutilization" argument. This denial is also not based on substantial evidence. The increase utilization of the Stephenson Property would be negligible and there was no evidence presented to the Board which suggested overutilization. Additionally, privacy is not a concern in this matter. The pole and building would be built on a portion of the site that does not abut a residential neighbor. Accordingly, the denial of this variance was clearly not based upon substantial evidence.

■ Furthermore, the Board's conclusion that the "aesthetic impact of the monopole and building is in conflict with the surrounding residential uses and would detract from the character and appearance of the area" is also not based upon substantial evidence. AT & T provided the board with evidence and expert testimony about the potential effects of the pole and building. First, AT & T submitted evidence that the aesthetic impact of the monopole on this area would be minimal. While the Stephenson Property is located in a "resi-

dential" zone, the area surrounding the property is dominated by commercial and public uses, including a tire company, a restaurant, a golf course, a church, a cemetery, a county park, and a community college. Additionally, because the facility would be unmanned, there would be no additional traffic to the site. Likewise, because of the design of the facility no storm water drainage problems or pollution would occur. Finally, AT & T presented expert testimony that conceded the existence of a slight negative visual impact, but stated that the benefit of the monopole would outweigh the negative effects. Additionally, AT & T offered to install a monopole that looked like a tree in order to reduce the negative visual effect even more. There was no evidence or testimony in support of the Board's conclusion that the negative aesthetic impact would be significant or that the facility would detract from the character or appearance of the area. It is clear from the language of the resolution and the transcripts of the proceedings that the denial of the variance on this ground was not based upon substantial evidence.

 Finally, the Board's conclusion that AT & T "failed to provide sufficient proofs that the monopole and antennas would not create a hazard in high winds and endanger nearby residents" was also not based on substantial evidence. The safety issue was not raised by the Board until after the close of evidence. At that time one member of the Board inquired about the safety of such poles in storms with high winds. The discussion on this issue was brief and the Board never requested that it be provided with expert testimony on the matter. AT & T did, however, provide expert testimony on the issue of construction and strength of the pole. Additionally, Kirby testified about the construction of the monopole itself as well as the depth and makeup of the foundation. With such little testimony and evidence to review, it is clear that the Board's denial on this ground could not

have been based upon substantial evidence.

From this discussion it is clear that the Board disregarded the expert testimony supplied by AT & T. "While the Board is certainly entitled to decide that it will disregard specific evidence, 'an agency board or commission consisting of lay persons may not completely disregard the only expert testimony available on an issue.' " *Cellular Tel. Co.*, 24 F.Supp.2d at 372 (citation omitted). Ignoring the experts' testimony and not addressing it in a more in-depth fashion in the resolution denying the Application only supports the conclusion that the denial was not based upon substantial evidence.

### 4. Controlling Nature of TCA over State Law

In an attempt to shift the attention away from its unsupported decision, the Board extensively cites to a factually similar case decided in this district on October 28, 1998. In *Cellular Telephone Co. v. Zoning Board of Adjustment of the Borough of Ho–Ho–Kus*, 24 F.Supp.2d 359 (D.N.J.1998), the court was presented with a case in which a cellular telephone company sued a municipality's zoning board of adjustment claiming that the board's denial of a conditional use variance to construct a monopole was not based upon substantial evidence. On cross-motions for summary judgment, the court, in a well reasoned opinion, held for the municipality and found that the board's decision was based upon substantial evidence. *Id.* at 374.

The Board cites to *Cellular Telephone* for the proposition that "as long as [a zoning board's] decision was not an attempt to prohibit personal wireless service altogether, discriminate among providers, or to impermissibly base its denial upon the environmental effects of radio frequency emissions, local land use law is controlling." *Id.* at 373. The Board, in support of its motion, claims that because there is no proof that its decision was an attempt to completely prohibit personal wireless

services or was the result of an effort to discriminate among providers, it should be affirmed.

■ While the Board contends that this portion of the *Cellular Telephone* opinion supports its position, it overlooks other applicable legal requirements. There is no question that local land use law is controlling in all instances except for those outlined above. These limited exceptions, however, do not excuse a local planning or zoning board from the "substantial evidence" requirement under the TCA. A local board cannot, under any circumstance, deny variance applications like the one in this case for purely arbitrary reasons. Substantial evidence is always required in order to ensure that zoning decisions of this nature are not arbitrary and are made with sufficient justification. *See* 24 F.Supp.2d at 366.

*Cellular Telephone* is distinguishable from the case at bar for the simple reason that the municipal zoning board in that case based its decision on substantial evidence. The board not only received expert testimony from the cellular company, but it also heard expert testimony about the detrimental effects the monopole would have on the aesthetics of the area as well as the damage it would do to the residential property values in the neighborhood. *Id.* at 371. Additionally, members of the community supplied the board with a non-scientific test of the actual cellular service available in the town. *Id.* at 372. While the court held that this test was not conclusive, it did note that it was the only "recorded examples of cellular telephone calls placed within the area to be served by the monopole." *Id.* These recordings allowed the board to hear the quality of cellular service in the area and determine the necessity of the facility. Finally, the board issued a well reasoned

*thirty-six* page resolution explaining its findings of fact, the applicable legal principles, its analysis, and its conclusions.

Substantial evidence was clearly present in *Cellular Telephone*. That is not the situation in the case at bar. As previously stated, the Board only received expert testimony and evidence from AT & T. No expert testimony or evidence was introduced to rebut the material produced by AT & T. Additionally, no evidence was produced to show that the aesthetics of the area or the property values of the neighborhood would be jeopardized by the existence of the facility. Furthermore, there were no tests conducted by experts or members of the community to verify the quality of the existing cellular service. Finally, the Board's resolution in the case at bar consisted of less than *five* full typewritten pages of conclusory statements. No evidence was discussed and the expert testimony was mentioned only in passing. This resolution lacked the length and indepth analysis which was present in the *Cellular One* case and which the court found to satisfy the "substantial evidence" requirement.[3] Accordingly, the Board's decision cannot be sustained on the record before this Court.

### D. Remedy

AT & T seeks an injunction directing the Board to approve its application so as to remove any further obstacles to its construction of the proposed cell site. Although the Board has not requested it, it is appropriate to consider whether remand for further consideration is proper. *See Virginia Metronet v. Board of Supervisors of James City County,* 984 F.Supp. 966, 977 (E.D.Va.1998); *AT&T Wireless PCS v. City Council of Virginia Beach,* 979 F.Supp. 416, 431 (E.D.Va.1997). The TCA directs that a district court shall decide suits on an expedited basis. *See* 47 U.S.C.

---

**3.** The Court does not suggest that the "substantial evidence" requirement can only be met by a lengthy resolution incorporating legal principles with facts, analysis, and conclusions. It is necessary, however, for the reso-

lution to be based upon substantial evidence. It is clear from the record that the conclusions made in the Board's resolution were not based upon the facts or the evidence submitted during the public hearings.

§ 332(c)(7)(B)(v). Because of the extensive delay that has already occurred in this case, a remand for further proceedings is not appropriate. *See Virginia Metronet,* 984 F.Supp. at 977; *AT&T Wireless PCS,* 979 F.Supp. at 431; *Illinois RSA No. 3, Inc. v.. County of Peoria,* 963 F.Supp. 732, 747 (C.D.Ill.1997); *Western PCS II Corp. v. Extraterritorial Zoning Auth.,* 957 F.Supp. 1230, 1239–40 (D.N.M.1997); *Bell-South Mobility, Inc. v. Gwinnett County,* 944 F.Supp. 923, 929 (N.D.Ga.1996). Despite having the opportunity to do so, the Board has failed to provide a decision supported by substantial evidence as required by the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(iii). The Board was aware of the TCA and its requirements but failed to comply with them. Remand would serve only to further delay the resolution of this matter and frustrate the intent of the TCA. Accordingly, AT & T's request for an injunction directing the Board to grant the Application will be granted.[4]

### III. CONCLUSION

For the reasons set for above, AT & T's motion for summary judgment will be granted and the Board's cross-motion will be denied. An appropriate order will issue.

### ORDER

Plaintiff, Cellular Telephone Company, d/b/a AT & T Wireless Services ("Plaintiff"), and defendant, Board of Adjustment of the Borough of Paramus ("Defendant"), having cross-moved for summary judgment; and the Court having heard oral argument on January 25, 1999; and in accordance with this Court's opinion of even date;

**IT IS** this 26th day of January 1999, hereby

**ORDERED** that Plaintiff's motion for summary judgment be and hereby is **GRANTED** and Defendant's motion for summary judgment be and hereby is **DE-NIED;** and it is further

**ORDERED** that Defendant is to grant Plaintiff's application for special use variances within twenty days of the date of this order.

---

4. Because the Board's decision was not based upon substantial evidence and therefore was in violation of the TCA, the Court does not need to reach the remaining issues dealing with violation of New Jersey law.