RAYMOND J. DANIELS, PLAINTIFF-RESPONDENT, v. BOROUGH OF POINT PLEASANT, DEFENDANT-APPELLANT.

Argued January 14, 1957—Decided February 11, 1957.

*Mr. W. Douglas Blair* argued the cause for the appellant (*Messrs. Blair and Blair,* attorneys).

*Mr. Ralph S. Warrington* argued the cause for the respondent (*Messrs. Evoy and Feinberg,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J.   This is an appeal from a judgment of the Superior Court, Law Division, holding an amendment to the building code of the Borough of Point Pleasant increas-

ing the fees for building permits invalid. We have certified this appeal on our own motion.

On February 17, 1956 the defendant borough passed an ordinance amending its building code, adopted in September 1945, to increase the fees charged for the issuance of building permits. The ordinance before the amendment provided for building permit fees as follows:

"For a total valuation of $500.00 or less, a $2.00 fee; for a total valuation of more than $500.00 and including $1,000.00 a $4.00 fee; and an additional fee of $2.00 for each additional $1,000.00 or fraction thereof of total valuation."

The amendment changed the method of calculating fees from the valuation of the building to the square foot contents of the new construction. For business or manufacturing construction the charge made was five cents a square foot of floor area; for additions to existing dwellings the fee was ten cents a square foot of floor area; and for new dwellings the fee was 25 cents a square foot of floor area, but with a $200 minimum in this last category.

The plaintiff is a contractor who has been engaged in the erection of homes in the borough for the past four or five years and has constructed a total of about 45 homes. The houses constructed by the plaintiff are small homes intended for sale to veterans and principally financed by federal guarantees. Generally speaking, his houses have a living area of about 836 square feet. Prior to the adoption of the February 1956 amendment, his building permit fees averaged about $18 a house. Under the new amendment the corresponding fees would be about $262. The plaintiff's houses sell for $12,000 and he testified that the total average cost is $11,108, leaving him a net profit of some $892 a house under the old building permit fee.

In the calendar year 1955, under the terms of the 1945 ordinance there were a total of 573 building permits issued by the borough, yielding gross fees of $8,875. Half of this went to the building inspector as compensation for his work in inspecting the buildings, *etc.*, and the other half was retained by the borough. The only direct cost of operating

the building department of the borough is what is paid to the building inspector for the services that he renders. There are no other clerks, stenographers or employees, although there is proof that the building inspector does receive some incidental assistance at times from the borough clerk, the borough attorney, the tax assessor and perhaps the tax collector, but this is minimal.

The evidence strongly indicates that the purpose of increasing the building permit fees was to raise additional revenue made necessary primarily by increased school costs which were in turn caused by the increase in population resulting from the new buildings. There is proof that the mayor of the borough made these declarations at the public hearings on the ordinance and two councilmen have testified to a similar effect.

The trial judge found that the primary purpose of the ordinance before us was to raise additional revenue to meet increased school and other costs resulting from more building in the borough and that it was therefore *ultra vires* and invalid.

The borough urges that since it has the power to regulate and control building within the municipality it has the power to fix and charge fees incident to that regulation to defray the costs of controlling the building. It also urges that it has not only the right to charge fees incident to the actual regulation of the building but also to include in these fees an amount to defray the costs of government resulting from the building of the new buildings. It urges that the amended ordinance is clearly a regulatory measure and that the fees are charged only as an incident to regulation, and as such are not unlawful, unless they are unfair, unreasonable or confiscatory. This, they say, the plaintiff has been unable to prove to a sufficient extent to overcome the presumption of validity that attaches to an ordinance of a municipal body.

The power to levy license fees for revenue purposes is not inherent in municipal corporations. The power of taxation is vested in the Legislature. Municipalities, being merely creatures of the State, have no power of taxation

unless it is plainly delegated to them by the Legislature, *Salomon v. Jersey City,* 12 *N. J.* 379 (1953). *R. S.* 40:48-1 gives to the governing body of every municipality the power to make, amend, repeal and enforce ordinances to:

"Regulate and control the construction, erection, alteration and repair of buildings and structures of every kind within the municipality; and to prohibit, within certain limits, the construction, erection or alteration of buildings or structures of wood or other combustible material; * * *."

Inherent in the power to regulate and control is the power to charge license fees primarily designed to defray the costs of such control. They must not, of course, exceed the bounds of reason considered in connection with the service and the cost of the service granted; see *Bellington v. East Windsor Township,* 17 *N. J.* 558 (1955), where the right of a municipality to derive revenue as an incident to regulation is discussed and approved. The court there said, 17 *N. J.,* at *page 565:*

"A license tax for revenue represents an exercise of the general taxing power. Thus, one is differentiated from the other, although the license fee for regulation alone also has the connotation of a tax as a charge on the business or pursuit for the cost of supervision in the public interest. [Cases cited.] The powers are essentially different: one is to license and regulate under the police power; the other, to raise revenue under the general power to tax. But the two may be 'unitedly exercised.' [Cases cited.] And the assessment may still constitute a license fee proper rather than a tax for revenue even though the fee charged be in excess of the regulatory expenses and burdens. Where the primary object is police regulation, it does not necessarily matter that the incidental result is revenue above the actual cost of supervision and control of the business; that is not enough to render the return a tax for revenue rather than a license tax; *e contra,* where revenue is the principal objective of the tax, it is not sustainable under the police power alone."

The principle has found expression also in *Board of Com'rs of City of Newark v. Local Government Board,* 133 *N. J. L.* 513 (*Sup. Ct.* 1945), in *Weiner v. Borough of Stratford, County of Camden,* 15 *N. J.* 295 (1954), and in *American Baseball Club of Philadelphia v. City of Philadelphia,* 312 *Pa.* 311, 167 *A.* 891, 92 *A. L. R.* 386 (*Sup. Ct.* 1933), appeal dismissed 290 *U. S.* 595, 54 *S. Ct.* 128, 78 *L. Ed.* 524 (1933).

In the latter case the Pennsylvania Supreme Court appropriately said:

"In the broad sense every ordinance which requires the payment of money is a revenue producing measure, but the primary purpose of ordinances such as this under consideration is the reimbursement of the city for providing special services to the licensees. * * *" (167 *A.* 891, 892)

What the Borough of Point Pleasant is attempting to do here is to defray the general cost of government under the guise of reimbursement for the special services required by the regulation and control of new buildings.

Here, the difference between the cost to the borough of regulating and controlling new construction bears no reasonable relation to the amount of revenue raised by the new amendatory ordinance. The record indicates that approximately the same services will now be rendered as were rendered in the prior years by the building inspector, and that the fees raised by the new ordinance exceed by more than 700% the cost of inspecting the buildings and regulating the construction. Admittedly, the purpose of the ordinance was to raise revenue to defray the increased cost of school and other government services. The philosophy of this ordinance is that the tax rate of the borough should remain the same and the new people coming into the municipality should bear the burden of the increased costs of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down; see *Gilbert v. Town of Irvington,* 20 *N. J.* 432 (1956). Admittedly, these fiscal problems confronting many of our rapidly growing municipalities are grave ones and would seem to call for legislative action; the remedy must come not from the municipalities nor from the courts but from the Legislature.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—7.

*For reversal*—None.