COMMONWEALTH vs. JOHN CALDWELL
(and two companion cases[1]).

No. 87-654.

Essex.   October 23, 1987. — November 19, 1987.

Present: ARMSTRONG, PERRETTA, & FINE, JJ.

*Municipal Corporations,* By-laws and ordinances, Fees. *Harbors. Vessel,*
Fees.

A "mooring and slip fee" assessed to boat owners by a city's harbormaster
   pursuant to a municipal ordinance was a fee, and not a tax, where the
   services provided by the harbormaster were primarily for the benefit of
   the parties required to pay the charges, the owners were free to keep
   their boats elsewhere and thus avoid the obligation to make payment,
   and the charges, rather than raising revenues generally, directly compen-
   sated the city, at least in part, for the cost of providing the harbormaster's
   services. [95-97]
A city ordinance authorizing imposition of a mooring and slip fee on boat
   owners, as reasonably construed by the officer charged with enforcing
   it, was not unconstitutionally vague as to frequency of assessment and
   date by which payment would be due. [97]

COMPLAINTS received and sworn to in the Salem Division
of the District Court Department on July 19, 1985, July 31,
1985, and September 6, 1985, respectively.

After transfer to the jury session, a motion to dismiss was
heard by *Joseph A. Furnari, J.,* and the cases were heard by
*Domenic J. F. Russo, J.*

*Eugene D. Bernstein* for the defendants.

*Judith Fabricant,* Assistant District Attorney, for the Com-
monwealth.

FINE, J. A city of Beverly ordinance provides that "[a]ll boats
or vessels moored in the Beverly waters or tied [on] slips in

---

[1] Commonwealth *vs.* William Carlton and Commonwealth *vs.* Frederick
Young.

Beverly waters shall be assessed a fee at the rate of One [dollar] ($1.00) per foot of length with a minimum charge of Twenty dollars ($20.00)." Beverly Revised Ordinances, art. IX, § 2-57B(2) (1981). The defendants were convicted in a District Court of violating the ordinance by failing to pay the fee assessed by the Beverly harbormaster for tying their boats on slips in the Beverly waters in 1984. On appeal, they maintain that the required payment, which we refer to as a "mooring and slip fee," is a tax and not a fee. A municipality does not have the power to levy, assess, or collect a tax unless the power to do so in a particular instance is granted by the Legislature. Art. 89, § 7, of the Amendments to the Massachusetts Constitution. No legislative enactment specifically grants Beverly the power to levy, assess, or collect the payments required by the ordinance, whether they constitute a tax or a fee. Thus, if the payments required are taxes, the defendants are correct in their contentions on appeal that they should have prevailed, either on their motions to dismiss the complaints or on their motions for required findings of not guilty based upon their State constitutional claims. We conclude, however, that the "mooring and slip fee" is a fee and not a tax.

The facts relevant to the motion to dismiss the complaint were not in dispute. Each of the defendants during 1984 owned a boat tied on a slip in Beverly (for which privilege he paid a charge to the slip owner), received notice from the harbormaster of the slip fee due, and failed to pay the fee. The duties of the harbormaster, defined in State statutes[2] and the Beverly ordinances,[3] relate primarily to enforcement of boating regula-

---

[2] For example, the harbormaster is responsible, under G. L. c. 91, § 10A, for issuance of permits for temporary mooring of floats or rafts; under G. L. c. 102, § 21, for regulating the movement and anchorages of vessels within the harbor; under G. L. c. 102, §§ 24 and 25, for ordering the removal of any vessel lying within the harbor or at a public wharf; and under G. L. c. 102, § 26, for regulating and stationing all vessels in the channels of his harbor.

[3] Beverly Revised Ordinances, art. IX, § 2-57 (1972), imposes on the harbormaster the following duties:

"(1) Provide the citizens along our beaches and the boatsmen with security and assistance when required.

tions, issuance of mooring permits, supervising public landings and boating ramps, and providing citizens along the beaches and boaters with security and assistance when required. The Beverly harbormaster's position description, placed in evidence on the motion to dismiss, lists and describes in some detail his responsibilities for patrolling the harbor, providing services and rendering assistance to boaters, conducting investigations of boating crimes and assisting in the prosecution of those crimes, and generally enforcing the law in the harbor and performing related duties. In summary, the harbormaster, in conjunction with assistants whose work he directs, is required to focus his activities extensively on safety and order in the Beverly harbor. The costs of operating the harbormaster's office are borne by the city; that cost increased from $16,135 in fiscal year 1981 or $41,116 in 1985. Revenues from the "mooring and slip fee" were $6,213 in 1981 and increased to $16,614 in 1985. In no year did the revenue from the "mooring and slip fees" exceed the cost of the harbormaster's operations. Pursuant to G. L. c. 60B, § 2, the city also receives funds from an excise tax paid by all owners of boats habitually moored or docked or principally situated in the city. The city collects the tax, the amount of which is based on valuation of the boats determined according to a formula set forth in c. 60B, § 2(*c*). Pursuant to G. L. c. 60B, § 2(*i*), the city must credit one-half of the amount collected to the municipal waterways

---

(2) Enforce the local ordinances and the rules of the road, the state boating laws and in particular those regulations pertaining to high speed boats and water skiing.

(3) Issue mooring permits.

(4) Organize and execute a mooring plan for vessels in Beverly waters.

(5) Confer with adjoining communities with regard to anchorages.

(6) Assist in coordinating an overall plan for the future development of the harbor and waterfront facilities.

(7) Direct the activities of the assistant harbormasters who have been appointed by the mayor.

(8) Seek out and take advantage of state funds which are available for waterfront development.

(9) Supervise and maintain guest moorings for visitors.

(10) Maintain and supervise all public landings and boating ramps."

improvement and maintenance fund, established by G. L. c. 40, § 5(72). During fiscal years 1982 through 1985, the city collected revenue from the boat excise tax. The net amount collected was $21,620 in 1982, and it increased to $24,878 in 1985.

The defendants moved to dismiss the complaints on the ground that the monetary exactions were, in fact, taxes, not fees. The judge, concluding that the services of the harbormaster were provided for a "clearly definable group who actually use the harbor for purposes which the [h]arbormaster, his equipment and staff are *exclusively* and *substantially responsible for*" (emphasis original), ruled that the required payment was a fee and denied the motion to dismiss.

At the jury-waived trial of the defendants before a different judge, the harbormaster and the city auditor provided testimony on behalf of the Commonwealth consistent with the evidence presented on the motion to dismiss. The defendants' cross-examination brought out the facts that the harbormaster provides emergency services to all boaters in Beverly waters without regard to whether, on the one hand, they are regularly moored or tied up in Beverly or, on the other hand, they operate boats regularly kept elsewhere or boats launched from trailers on shore.

In reviewing the ordinance, we treat with deference the classification of the monetary exaction as a "fee" by the city's legislative body. *Associated Indus. of Mass., Inc.* v. *Commissioner of Rev.,* 378 Mass. 657, 667-668 (1979). *Emerson College* v. *Boston,* 391 Mass. 415, 424 (1984). Nonetheless, the true nature of the charge must be determined by its operational effect rather than its name. *Thomson Elec. Welding Co.* v. *Commonwealth,* 275 Mass. 426, 429 (1931). *Emerson College* v. *Boston,* 391 Mass. at 424. "The burden of proving that the charges are not fees rests on those who challenge their legality." *Southview Co-op. Housing Corp.* v. *Rent Control Bd. of Cambridge,* 396 Mass. 395, 403 (1985).

The distinction between a fee and a tax is discussed in *Emerson College* v. *Boston,* 391 Mass. at 415. *Emerson College* involved a payment required of owners of certain types of buildings in Boston that consumed a disproportionate share

of the city's firefighting budget. The required payments were to compensate the city for the cost of providing augmented fire service availability. If the required payments were taxes and not fees they would be struck down on State constitutional grounds. The court listed three characteristics which distinguish fees from taxes. "[T]hey are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society,' *National Cable Television Ass'n* v. *United States,* 415 U.S. 336, 341 (1974); they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge, *Vanceburg* v. *FERC,* 571 F.2d at 630, 644 n.48 (D.C. Cir. 1977), cert. denied, 439 U.S. 818 (1978), and the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Emerson College* v. *Boston,* 391 Mass. at 424-425.

The required payments for extra fire services were determined to be taxes, having failed to satisfy either of the first two requirements for a fee. The benefits of extra fire protection were not "sufficiently particularized as to justify distribution of the costs among a limited group." *Id.* at 425. The payments were not voluntary because the owner of the building could not choose to forgo the extra services. Finally, although not considered dispositive, the court noted that the payments appeared to generate revenue because they were earmarked for general police and fire services rather than for the extra fire protection.

Unlike the payments in *Emerson College,* the charge in issue in the instant case substantially satisfies the applicable three-part test for a fee. Thus, both in name and by operation, it is a fee, not a tax. We discuss each of the three requirements in the context of the particular facts of the case and the contentions of the defendants.

First, the services provided by the harbormaster are for the benefit of the parties required to pay the charges. The duties of the harbormaster's office center primarily on the supervision and regulation of Beverly boaters, as well as the provision of

assistance to boaters in the Beverly harbor. The defendants contend that the benefits of the services are not strictly limited to the owners who pay the charges but extend to the boating public generally, among whom are transients and owners of boats launched from trailers on shore. The harbormaster testified, however, that only thirty percent of the boats using the Beverly harbor are transients and only two percent are launched from trailers. Given the essence of the harbormaster's function, the flow of benefits to the group of boaters required to pay is "sufficiently particularized" to qualify it as a fee.

Even so, the defendants' focus on the different categories of boaters is too limited. The relevant distinction is between the benefits provided to the boaters who are served, most of whom use Beverly as their home port, as opposed to members of the public generally. As to that distinction, the boaters are the primary beneficiaries of the harbormaster's services, while a relatively insignificant aspect of the harbormaster's duties relates to members of the general public who might, for example, be beach users or surfers. In comparison to the *Emerson College* case, the benefits of the Beverly harbormaster's services were available to the general public to a lesser extent then were the augmented fire protection services available to the general public in Boston. The extra fire protection, for example, clearly benefited the neighboring buildings, which would be placed in immediate danger from any significant fire.

Second, the boat owners have a meaningful choice whether to pay the fee and take advantage of the service offered, at least in the sense that the boats are movable and the owners are free to keep them someplace other than in the Beverly harbor. Two of the three defendants do not even reside in Beverly. The choice of avoiding use of the services and paying the charges is significantly more meaningful to the owner of a movable boat than it was to the owner of substantial real estate in *Emerson College.*

And third, the charges collected, rather than raising revenues generally as was the case in *Emerson College,* directly compensated Beverly, at least in part, for the cost of providing the harbormaster's services. In each of the years 1981 to 1985,

the revenues from the charges were sufficient to cover less than half the expenses of the office. It is true, as the defendants point out, that Beverly keeps half of the boat excise taxes it collects under G. L. c. 60B, § 2, and that in two of the years as to which there was evidence the funds derived from the excise tax and the "mooring and slip fee," when combined, exceeded somewhat the costs of operating the harbormaster's office. In order for a monetary exaction to be a fee, however, the equivalence between the cost of providing the services and the revenue collected need not be exact. It is sufficient that the revenue collected is not significantly and consistently in excess of the cost of providing the services. Consideration of the excise tax revenue, half of which is collected to meet the general needs of the municipality, is irrelevant to the inquiry whether the charge imposed by Beverly was intended to defray the cost of the particular services provided by the harbormaster's office.

An alternative basis for the defendants' motions for required findings of not guilty was the assertion that the ordinance was unconstitutionally vague as to the frequency of assessment and the date by which payment would be due. We indulge every rational presumption in favor of an ordinances's validity against a claim of unconstitutional vagueness. *Commonwealth* v. *Lammi,* 386 Mass. 299, 301 (1982). See also *Commonwealth* v. *Brooks,* 354 Mass. 208, 209 (1968). Moreover, if the ordinance "can be made constitutionally definite by a reasonable construction, the court is under a duty to give it that construction." *Thomes* v. *Commonwealth,* 355 Mass. 203, 207 (1969). Compare *Commonwealth* v. *Williams,* 395 Mass. 302, 306 (1985). When subsections (a) and (b) of § 2-57B are read together, the ordinance is reasonably construed, consistent with the harbormaster's interpretation, to authorize imposition of the fee on an annual basis and to require payment within a reasonable period of time after notice from the harbormaster. There is no merit in the contentions made in the defendants' appellate brief, but not raised in the trial court, purportedly relating to equal protection and judicial notice.

*Judgments affirmed.*