GREATER FRANKLIN DEVELOPERS ASSOCIATION, INC.,
& others[1] *vs.* TOWN OF FRANKLIN & another.[2]

No. 98-P-1032.

Norfolk. January 13, 2000. - June 26, 2000.

Present: PORADA, GREENBERG, & RAPOZA, JJ.

*Municipal Corporations,* By-laws and ordinances, Fees. *Constitutional Law,* Taxation.

A "school impact fee," charged by the town of Franklin to persons constructing new housing or expanding an existing dwelling, was an impermissible tax, where, although paid by choice, the charges did not benefit the payers in a manner not shared by other residents and were collected to augment general revenues out of which payment was made for necessary improved and expanded school facilities. [502-505]

CIVIL ACTION commenced in the Superior Court Department on December 4, 1995.

The case was heard by *Gordon L. Doerfer,* J., on motions for summary judgment, and entry of a separate and final judgment was ordered by him.

*Eric W. Wodlinger & Mark Bobrowski* for town of Franklin & another.

*J. Owen Todd* for Greater Franklin Developers Association, Inc., & others.

*Thomas A. Reed,* for Home Builders Association of Massachusetts, amicus curiae.

*Elaine M. Lucas,* for City Solicitors & Town Counsel Association, amicus curiae, submitted a brief.

GREENBERG, J. Sheltered by geography from the bustle of Boston, yet within a reasonable commute to work, the town of

---

[1]Dennis F. Marguerite, Francis A. Molla, John C. Colella, Sean Skahill, and Anthony Marinella.

[2]Town council of town of Franklin.

Franklin has drastically changed demographics. From 1980 to 1995, the town's population increased by 41 percent from 17,500 to 25,000. Despite the building of a brand new school, completed in 1995, a research group hired by the town that same year projected that growth would cause the town's schools to overflow by the year 2000, with an estimated 320 more pupils than spaces.

On December 4, 1995, the date on which the Greater Franklin Developers Association (association) brought this action, by-law amendment 95-300, adding a new chapter 83 to the town code, had come into effect, under which the town imposed a "school impact fee" to "ensure[] that development bears a proportionate share of the cost of capital facilities necessary to accommodate such development and to promote and protect the public health, safety and welfare." § 83-2(2). The association and certain of its individually named members sought declaratory and injunctive relief in the Superior Court to set aside the imposition and collection of those fees. On cross-motions for summary judgment, the judge decided in favor of the association. The judge declared that the fees were "an invalid and unauthorized tax." The town appeals.

The material facts are not disputed. Essentially carrying out the recommendations of the town council's forecast of overcrowding in the public schools, the legislative findings of the by-law amendment state that "Franklin must expand its school systems if new development is to be accommodated without decreasing current [educational] standards." § 83-2(1). The findings further state that "[e]ach type of residential dwelling unit [subject to this by-law] will create demand for the acquisition, expansion or construction of school improvements." § 83-2(3).

The pertinent part of the by-law reads as follows: "No certificate of use and occupancy for any new or expanded residential building . . . shall be issued unless and until the impact fees hereby required have been paid, unless exempted by this By-Law." § 83-3(A). The by-law sets out a fee schedule, based on the estimated cost increase imposed by each kind of housing unit. Each single-family house, for example, is estimated to bring .68 children into the public school system, while each condominium brings .25 children. Initially, the town determined how much of the cost to expand the school system would remain after it utilized all other funding sources, and

then applied the above formula to cover the deficit, charging proportionately higher school impact fees for single-family homes than for condominiums.[3] Money collected under the by-law is funneled into one of two accounts earmarked to cover the cost of expanding schools in either the northern or the southern district, depending on the location of the new housing. §§ 83-3(C)(2), 83-4. The funds may not be used to maintain existing buildings, and after eight years, any remainder not used for expansion will be returned to the payer, if the payer applies for it. §§ 83-3(D)(1), 83-3(F).

Under Massachusetts law, towns do not have the power to tax. See art. 89, § 7, of the Amendments to the Massachusetts Constitution ("Nothing in this article shall be deemed to grant to any city or town the power to . . . levy, assess and collect taxes . . . ."); *Commonwealth* v. *Caldwell*, 25 Mass. App. Ct. 91, 92 (1987). Towns may, however, exact fees. See G. L. c. 40, § 22F ("Any municipal board or officer empowered to issue a license, permit, certificate, or to render a service or perform work for a person or class of persons, may, from time to time, fix reasonable fees for all such licenses, permits, or certificates . . . and may fix reasonable charges to be paid for any services rendered or work performed"). This case turns on whether the by-law imposes an impermissible tax or a permissible fee.

Fees "share common traits that distinguish them from taxes: [1] they are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner 'not shared by other members of society'; [2] they are paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge; and [3] the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses." *Emerson College* v. *Boston*, 391 Mass. 415, 424-425 (1984) (citations omitted).

We apply the analysis developed in the *Emerson College* case to distinguish valid municipal user fees from unlawful taxes

---

[3]Although the occupancy permit fee payer has the option of preparing and submitting to the town administrator an independent fee calculation study, the by-law amendment requires that the calculation must follow the town's methodology and establishes that the town administrator is at liberty to accept or reject the permit seeker's calculations. See § 83-3(B)(2). According to the record, the school impact fee schedule charges $2,500 for single family detached homes; $528 for condominium/single family attached homes; and $726 for multi-family/rental residences. See *id.* at § 83-4(2).

and, more specifically, to determine whether the judge in the case at hand correctly concluded that the purported "impact fee" was invalid because it failed to benefit fee payers in a manner not shared by other members of the community. We agree with the judge that the benefit of expanded school facilities is not particularized to the fee payers. First and foremost, expanded school capacity benefits the entire community. We hardly need state that society as a whole gains with the education of its children and suffers at the lack.

More than that, assuming without deciding that individuals under the by-law are able to demonstrate that their new housing will not contribute to the demand for more schools and thereby exempt themselves from the fee requirement, the benefit of new school facilities still is not limited to fee payers. An example may be illustrative: The funds are earmarked for capital improvements, such as a new cafeteria or an entirely new school. No one has proposed, as we expect no one would, that only students living in homes assessed this fee be granted access to the new cafeteria, while those living in older homes must continue to eat in the gymnasium; nor that children living in homes not assessed the fee be prevented from attending the new school, and instead must be bused to an older facility.[4] Under the first *Emerson College* factor, therefore, the school impact fee is better characterized as a tax because it does not benefit the fee payer in a manner not shared by others. See *Emerson College* v. *Boston*, 391 Mass. at 424.

As for the second test, that the fee be paid by choice, it is true that developers can decide not to build residences in the town and that homebuyers, if they are the fee payers, can buy elsewhere. See *Bertone* v. *Department of Pub. Util.*, 411 Mass. 536, 549 (1992); *Baker* v. *Department of Envtl. Protection*, 39 Mass. App. Ct. 444, 446 (1995). The motion judge so held,[5] but correctly noted that this factor is not conclusive. See *Berry* v. *Danvers*, 34 Mass. App. Ct. 507, 512 n.6 (1993); *Morton* v. *Hanover*, 43 Mass. App. Ct. 197, 202 (1997).

---

[4]As it is not before us, we do not pass on the dubious legality of such segregation. We simply illustrate the point that beyond the obvious benefit accruing to society at large from the availability of sufficient facilities to educate every child, the benefit accruing to individual children — and through them to the actual fee payers — is not particularized.

[5]Although the town's counsel devotes considerable energy on appeal to claiming that the motion judge erred in determining that the voluntariness prong was not met, in fact he concluded that it was.

The third test, together with the first, demonstrates the taxing nature of this fee. In true fee situations, charges are collected not to raise general revenue but to compensate the governmental entity for its expenses in providing that particular service. The provision of sufficient school facilities is not a particular service which is unavailable to the general public; it is the government's obligation to provide such facilities to the general public out of general revenue funds. See *Jenkins* v. *Andover*, 103 Mass. 94, 96-97 (1869) (noting that, since the founding of the colony, towns have been required to provide "free education . . . supported by taxation of the inhabitants"). The point can be seen in *Emerson College*, where the court stated that the fee — there for augmented fire protection services — did nothing in particular for the properties that paid it: "instead, fire protection once included within the general property tax has been reclassified as a special service and an incremental cost imposed." *Emerson College* v. *Boston*, 391 Mass. at 418 n.5. In the case at bar, school facilities once included within the general property tax have been improperly reclassified as a special service. In a strikingly similar school impact fee case, the court in *Daniels* v. *Point Pleasant*, 23 N.J. 357, 362 (1957), struck down an ordinance raising the cost of building permits to cover the increased school costs incurred by growth. "What the Borough of Point Pleasant is attempting to do here," that court said, "is to defray the general cost of government under the guise of reimbursement for the special services required by the regulation and control of new buildings. . . . The philosophy of this ordinance is that the tax rate of the borough should remain the same and the new people coming into the municipality should bear the burden of the increased cost of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down." *Daniels* v. *Point Pleasant, supra*. We agree.

The town points to *St. John's County* v. *Northeast Florida Builders Assn., Inc.*, 583 So. 2d 635 (Fla. 1991), a case in which the Florida Supreme Court upheld a school impact fee. The law of Florida, however, requires only that the town satisfy a "rational nexus" test. See *id.* at 637. The *Emerson College* test is far more stringent. The case before us also differs in several key ways from the other case the town relies on, *Bertone* v. *Department of Pub. Util.*, 411 Mass. 536 (hook-up charges assessed to those seeking electrical service at a location not previously serviced are valid fees). Most importantly, a

statute in *Bertone* gave the municipality the authority to set electricity rates, and the court concluded that hook-up fees fell within that power. See *id.* at 542-545. No statute grants the town in the case at bar similar authority.[6]

In concluding that the school impact fee is really a tax, we are not without sympathy for the town's position. "There can be no controversy about the obvious fact that the orderly development of a municipality must necessarily include a consideration of the present and future need for school . . . facilities." *Pioneer Trust & Sav. Bank* v. *Mount Prospect*, 22 Ill. 2d 375, 380-381 (1961). As said in *Daniels* v. *Point Pleasant*, 23 N.J. at 362, however, "the remedy must come not from the municipalities nor from the courts, but from the Legislature."

Finally, the town fastens upon the notion that the service bought with this fee is the increased marketability that new homes boast when located near schools with sufficient capacity for incoming pupils. It is enough to say that the by-law itself states that the money is being collected to pay for the cost of new school facilities. See § 83-3(D)(1). The town filed nothing — and the record contains nothing — setting forth facts which unsettle the conclusion that the benefits obtained by exacting the school impact fee are expanded and improved school facilities.

*Judgment affirmed.*

---

[6]Amici curiae for the town claim the Superior Court erred in failing to consider three additional cases from other jurisdictions upholding school impact fees or land dedications. The motion judge explicitly discussed these very cases in his decision, correctly distinguishing them as upholding such fees or dedications either under a statute that specifically permits the imposition of fees or dedications for schools, or under a Florida-style rational nexus test. See *Loyola Marymount Univ.* v. *Los Angeles Unified Sch. Dist.*, 45 Cal. App. 4th 1256 (1996) (statute); *Krughoff* v. *Naperville*, 68 Ill. 2d 352, 358-359 (1977) (statute plus rational nexus); *Jordan* v. *Menomonee Falls*, 28 Wis. 2d 608, 614-620 (1965) (statute plus rational nexus). Furthermore, as these amici intended to persuade us that the by-law at issue was not a tax and therefore could be grounded on home rule, one of the above was particularly poorly chosen. *Jordan*, *supra* at 621, reads: "The provision possesses sufficient attributes of a tax so that it cannot be grounded upon the home-rule amendment, sec. 3, art. XI of the Wisconsin constitution."