**NEXTEL COMMUNICATIONS OF the MID–ATLANTIC, INC. d/b/a Nextel Communications, Plaintiff,**

v.

**The TOWN OF RANDOLPH, MASSACHUSETTS, The Board of Selectmen of the Town of Randolph, and James F. Burgess, Jr., Daniel L. Lam, William Alexopolous, Stephen J. Toomey, and Dorothy M. Burke, in Their Capacities as Members Of The Board of Selectmen of the Town of Randolph, Massachusetts, Defendants.**

**No. Civ.A. 00–12351–PBS.**

United States District Court,
D. Massachusetts.

March 20, 2002.

Matthew R. Johnson, Devine, Millimet & Branch, P.A., Manchester, NH, Steven E. Grill, Devine, Millimet & Branch, PA, Manchester, NH, for Plaintiff.

Paul R. DeRensis, Kimberly M. Saillant, Deutsch, Williamss, Brooks, DeRensis, Holland & Drachman, Boston, MA, for Defendants.

A. David Mazzone, Walter J. Skinner, United States District Court, Boston, MA, for ADR Providers.

### MEMORANDUM AND ORDER

SARIS, District Judge.

The Town of Randolph, Massachusetts (the "Town"), through its Board of Selectmen (the "Board"), denied an application by plaintiff, Nextel Communications of the Mid–Atlantic, Inc. ("Nextel"), seeking permission to build a 120–foot–tall telecommunications antenna facility on a parcel of land within the Town. Nextel claims this denial violates the Telecommunications Act of 1996 ("TCA"), and that the Town's regulatory scheme for the siting of wireless communication towers violates the TCA, state and federal law, and the United States Constitution.[1]

The parties have filed cross-motions for summary judgment. After hearing, the Court orders that the case be remanded on the ground that the reason given for the

---

**1.** In Count I of the Complaint, Nextel asserts that the Town's denial of its application was not supported by substantial evidence contained in a written record, as is required by Section 704 of the TCA, codified at 47 U.S.C. § 332(c)(7)(B)(iii). Count II alleges that the Town's zoning bylaw, as applied, has the effect of prohibiting Nextel from providing personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Count III asserts that the bylaw and the accompanying rules and regulations adopted by the Board amount to an unreasonable and unlawful barrier to entry, in violation of 47 U.S.C. § 253(a). Count IV claims that the bylaw and rules are arbitrary and unreasonable, fail to advance a legitimate governmental interest, and result in disparate treatment of similarly situated persons in violation of the Fourteenth Amendment of the United States Constitution. Count V alleges that the Town, the Board, and its members have adopted policies and engaged in conduct which have deprived Nextel of its rights secured by federal law and thereby caused Nextel to sustain economic damages, in violation of 42 U.S.C. § 1983. Finally, Count VI alleges that the bylaw and rules are arbitrary, capricious, unreasonable and in excess of the authority lawfully granted to the Town or its Board under state law.

denial of the application is not supported by substantial evidence in the written record. However, the Court allows the plaintiff's motion for summary judgment that the fees are contrary to state law and allows the Town's motion for summary judgment on Nextel's claim that the two-year duration of the special permit violates the Due Process Clause and its claim for damages and fees pursuant to 42 U.S.C. § 1983.

## I. BACKGROUND

### A. *Randolph's Bylaw*

Article X of the Town's zoning bylaws ("Article X"), entitled "Wireless Communications Facilities," regulates the "placement, construction, installation, modification, use, monitoring and removal of Wireless Communications Facilities" ("WCFs"), including towers and antennae, within the Town. Article X, §§ 200–57, 200–59. Article X seeks to "preserve the character and appearance of the Town," while "guid[ing] sound development ... consistent with applicable federal law." Article X, § 200–57. No cellular phone towers or antennae may be constructed within the Town without the issuance of a special permit, issued by the Board. Article X, § 200–58.

Article X places significant restrictions on the siting and construction of WCFs. WCFs are permitted only in Industrial Districts and on Town-owned property. *Id.*, § 200–62. It gives preference to locating the WCF in an existing structure. *Id.*, § 200–64(A). A WCF must be set back from the property lines of the lot on which it is located by a distance equal to the total height of the WCF plus five feet. *Id.*, § 200–64(C). In addition, no structure (with the exception of the WCF's structures) may be constructed within 500 feet of the WCF, and no WCF may be built within 300 feet of a traveled way, or within 500 feet of any habitable dwelling or business. *Id.*, §§ 200–64(D) & (F). No WCF may exceed 150 feet in height. *Id.*, § 200–65(A). Article X also places significant limitations on the appearance of the WCF, and requires buffers of camouflaging vegetation for WCF towers. *Id.*, § 200–66; *see also id.*, §§ 200–67, 200–68.

Article X provides for "flexibility" in the requirements for setback distances. *See id.*, § 200–65E. The requirements for a "fall zone" setback equal to the height of the tower plus five feet and for the construction of a structure within 500 feet of the WCF may be waived. *See* Article X, § 200–64(C) & (D). Article X contains no similar waiver provision for the 500–foot setback from a habitable building or the 300–foot setback from a traveled way. *See id.*, § 200–64(F). The Board may also "reduce the required setback distance of the zoning district by as much as 50% of the required distance, if it finds that such reduction shall substantially better serve the purposes" of the Article. *Id.*, § 200–65(E). The Board must consider the visual and safety impacts of the proposed use. *Id.*

### B. *Randolph's Filing Rules and Regulations*

In addition to the strictures of Article X, a party wishing to construct a WCF in the Town must comply with the "Application Filing Rules & Regulations" ("Filing Rules") promulgated by the Town. The Filing Rules specify those documents that must be submitted with an application for a special permit to construct a WCF. They require, *inter alia*, that for each application, the applicant pay:

A. A filing fee of one hundred ($100) dollars per linear foot of tower, plus one hundred ($100) dollars per square foot of building; together with, five hundred ($500) dollars per cell or antenna.

B. A review Fee [sic][of] one hundred ($100) dollars per linear foot of tower,

plus one hundred ($100) dollars per square foot of building; together with, five hundred ($500) dollars per cell or antenna.

Filing Rules, H(A) & (B).

## C. *Board Consideration of Nextel's Application*

The Board's July 10, 2000 meeting minutes first reflect Nextel's intention to construct a WCF at 451 High Street. At the following Board meeting, on August 7, 2000, Nextel participated in a "pre-conference" during which Nextel presented its plan for the High Street WCF. Daniel Rosemark, who presented the WCF plan for Nextel, specifically mentioned during the meeting that the plan would not conform to requirements that the WCF be 300 feet from a public way and 500 feet from a residence. Nextel proposed to locate its 120–foot monopole within 311 feet of an abutting residence; it also abutted a publicly traveled way. (Nextel Application, pp. 12–16, Aff. of David Rosemark Ex. C(2)). Board Chairman Burgess then stated that "this can be waived, if the petitioner asks, at the formal hearing." (Minutes of the August 7, 2000 Meeting of the Randolph Board of Selectman, Aff. of James Burgess, Ex. E.) The Board advised Nextel to file its application and scheduled the final hearing on the special permit for September 25, 2000.

On September 8, 2000, Nextel submitted its Special Permit Application for the construction, installation, operation and maintenance of a 120–foot WCF located at 451 High Street in Randolph. The parcel is approximately 120 feet by 115 feet in size and contains an uninhabited single-family home and garage. The application included two requests for dimensional variances from the setback provisions of the Bylaw, if the Board deemed such variance requests necessary. Specifically, Nextel sought variances from the requirement, under § 200–64(F) of Article X, that the WCF tower be set back a distance of its height plus five feet from the edge of the lot, and from the traveled way and habitable building setback requirements.

Nextel did not submit the Filing and Review Fees with its application. Instead, its application included a challenge to both fees as unlawful and unenforceable under federal and state law. Nextel argued that under the Town's current fee structure, it would have to pay $76,000 to file their application and have it considered by the Board.

Due to Chairman Burgess's absence from the September 25, 2000 meeting, Nextel requested and received a continuance of the hearing on its application. The rescheduled hearing took place on October 16, 2000. At the October meeting, the Board announced that it had received two letters from abutters opposing Nextel's application. However, no one spoke in opposition to the application during the meeting.

Nextel described both its current coverage in the Town and the gap in its coverage, including a lack of service in and around portions of North Randolph and for a two- to three-mile stretch of Route 128. Nextel also reported its search for a WCF site, including its unsuccessful attempt to locate the WCF on an existing WCF pole at 490 High Street, the unsuitability of locating the WCF on three existing buildings because the buildings were too low, and its inability to locate the WCF on two other parcels because of space and availability issues. Nextel then outlined its landscaping and construction plans for the proposed WCF, and its performance of a "crane test" to gauge the visual impact of the proposed tower. On questioning from the Town Counsel, Nextel conceded that the WCF would be within 125 feet of the property line, and that there would be three buildings within 500 feet of the tow-

er. Nextel requested waivers of the 125–foot and 500–foot setback provisions.

Nextel raised the issue of the amount of the fee required under the Filing Rules. Mr. Rosemark estimated that, between the Filing fee and the Review fee, Nextel would be required to pay $76,000 to have its application considered.

At the request of one of the Board members, no vote was taken, and the hearing was continued to November 13th. At that meeting, Nextel reiterated the particulars of its application and its need for waivers. The Chairman stated that prior to the November meeting, the Board had attempted to get independent verification that the site was necessary, but was unable to obtain this information. Nextel stated that a parcel would have to encompass 22 industrial acres, if square, or 18 acres, if circular, to fully comply with the Bylaw's requirements.

Nextel and the Board then engaged in a discussion concerning "reasonable fees" for the application's filing and review. Nextel stated that the current fees would total $76,000. Selectman Lam asked Nextel what it would consider a "reasonable fee." Nextel later answered that it typically paid $200 in other towns, but that a reasonable fee could be as high as $500. Town Counsel conceded that the fees must coincide with the costs incurred by the Special Permit Granting Authority. He also stated, however, that the substantial amount of legal work performed by his office in reviewing the Nextel application (and on another WCF application by Omnipoint), as well as fees paid to expert consultants justified the fee. Nextel countered that $1000 would be reasonable.

Chairman Burgess then asked Town Counsel about Nextel's request for a waiv-

er of the setback requirement under Section 200–65E. Town Counsel argued that the Board should not grant a setback waiver in excess of the 50% allowed by the Bylaw. Town Counsel further stated that the Board would be "perfectly within their rights under the Bylaw and Federal telecommunications law to deny" the permit application, because the site would not meet the Article X requirements even if the waiver was granted.

After further discussion, the Chairman announced the Board's decisions that the Review fee would be set at $19,000 and the Filing fee would be determined at an unspecified future date.

The Board then closed the hearing and voted on the application. Each member of the Board voted against Nextel's application, with four members specifically citing Nextel's failure to comply with the setback requirement.[2] One member asserted that Nextel had not sufficiently demonstrated that the current level of coverage was inadequate or that all avenues for coverage had been investigated. Chairman Burgess also cited Section 200–63B, allowing the Town to deny the application if greater than fifty percent of the coverage would be located outside the Town; Section 200–64E, mandating that lots containing WCFS have the same minimum frontage as those of the surrounding zoning district; Section 200–65C, mandating that WCF lots comply with the setback provisions of the surrounding district; and, Section 200–66B, requiring a vegetation buffer of 50 feet.

Written notice of the adverse decision was sent to Nextel on November 24, 2000. The notice again set forth each Board member's citations to the Bylaw sections, as discussed above.

---

**2.** For a discussion of the Board's mis-citation of the setback requirements as Section 200.61, *see* III.A., below.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour*, 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

## III. NEXTEL'S MOTION

### A. *Written Decision Supported by Substantial Evidence*

Nextel argues that the Board's written decision is not supported by substantial evidence in the written record, as required by the TCA. 47 U.S.C. § 332(c)(7)(B)(iii). This Court must inquire whether the Town's application of its own zoning requirements is based on substantial evidence. *Town of Amherst, NH v. Omnipoint Communications Enter., Inc.*, 173 F.3d 9, 16 (1st Cir.1999).

The substantial evidence standard of review under the TCA is "the same as that traditionally applicable to a review of an administrative agency's findings of fact." *Southwestern Bell Mobile Systems, Inc. v. Todd*, 244 F.3d 51, 58 (1st Cir.2001). "Judicial review ... 'even at the summary judgment stage, is narrow.'" *Id.* at 58 (quoting *Assoc. Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir.1997)). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Omnipoint Communications MB Operations, LLC v. Town of Lincoln*, 107 F.Supp.2d 108, 115 (D.Mass.2000) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999)). "[A]ll evidence must have been considered by the board, adequate explanations for rejecting relevant evidence must have been provided, and the board's decision must have been 'accompanied by a clear and satisfactory explication of the basis on which it rests.'" *Cellular Telephone Co. v. Board of Adjustment of Borough of Paramus*, 37 F.Supp.2d 638, 645 (D.N.J.1999) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981)).

Although deferential, the review "is not a rubber stamp." *Southwestern Bell*, 244 F.3d at 59 (quoting *Penobscot Air Serv., Ltd. v. Fed. Aviation Admin.*, 164 F.3d 713, 718 n. 2 (1st Cir.1999)). "When the record 'clearly precludes the ... decision from being justified by a fair estimate of the worth of the testimony of witnesses or [the Board's] informed judgment on matters within its special competence or both,' that decision must be set aside." *Id.* at 59

(quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

To review the Board's decision, the Court appropriately looks to the written decision issued on November 24, 2000, rather than the oral statements of members during Board meetings or during their vote. *See Southwestern Bell*, 244 F.3d at 59–60 (holding that the written record cannot substitute for written decision of the Board, "[e]ven where the record reflects unmistakably the Board's reasons for denying the permit. . . ."). The scope of the Court's review, however, is not strictly confined to the four corners of the Board's decision. *See id.* at 60.

The Board's written decision states that the special permit was denied because "the use is not in harmony with the intent and purpose of the zoning bylaw because it does not conform with the zoning bylaw" and because it "does not meet the other provisions of the zoning bylaw for issuance of a special permit as follows: The proposed [WCF] does not meet all the other applicable requirements of the zoning bylaw and will not serve the public good."

Although the TCA does not require formal findings of fact and law in a written denial, *see Southwestern Bell*, 244 F.3d at 59, this pabulum does not meet the TCA's requirements for a written decision. "[The] written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." *Id.* at 60. By themselves, these conclusory statements amount to little more than an official "because we said so."

The written decision also cites each Board member's reasons for rejecting Nextel's application. In the decision's recording of the reasons for each member's vote, a majority of Board members cited the proposed WCF plan's noncompliance with Sections 200–57 ("Purpose") and 200–61 ("Prohibitions") of the Bylaw. Neither of these citations provides a reason for denying Nextel's application supported by substantial evidence in the written record.

Section 200–57 sets forth the general purposes of the Bylaw. These include "preserving the character and appearance of the Town," "minimizing the adverse impact of [WCFs]," providing procedures for the Board's treatment of WCFs, minimizing the number and height of WCFs in the Town, and guiding sound development. Article X, § 200–57. A mere citation to this Section does not sufficiently explain the reasons for the Board's denial. Without more specifics as to what portion of Nextel's application runs contrary to the purposes of the Bylaw, this Court cannot determine whether the evidence in the record supports the Board's decision.

Section 200–61 sets forth seven prohibitions on WCF construction. Two of these prohibitions apply solely to WCFs constructed on existing structures, and could not apply to Nextel's application. Of the remaining five, Section 200–61(A) sets forth design and material requirements for WCF towers; (B) prohibits advertising signs; (C) prohibits barbed wire or similar materials on required security barriers; (E) restricts WCF to Industrial or Town-owned districts; and (G) sets forth maximum noise limits. Nextel provided substantial and uncontroverted evidence in its application and again at the hearing that it met each of these requirements.

The minutes of the Board meetings regarding Nextel's application and requests for variances demonstrate that the Board focused at least in part on Nextel's failure to comply with the setback requirements of Article X, Section 200–64. However, no one cited that section in the written decision or even in the summary of the oral reasons of the select people. Instead, Selectman Lam mis-cited the setback re-

quirements as Section 200–61 when he voiced the reasons for his vote to deny Nextel's application. Selectman Toomey followed suit, and two other Board members cited Section 200–61 without clarifying to whether they were referring to the setback requirements or other prohibitions of the section. The written decision states a concern about setback requirements *only* with regard to Selectman Toomey's vote.

The question thus becomes whether this Court may look beyond a written decision to the written record of the Board's discussions to fathom the real reasons for the Board's denial, and then ascertain whether they were supported by substantial evidence. If the written decision had specified the setback problem and merely miscited the applicable zoning provision, the court could look beyond the clerical error and perform its review function. However, here the written decision is nebulous, the views of the members diverse, and the citations plainly wrong.

While local boards are staffed by lay people inexperienced in the writing of official decisions, a written denial should contain the reasons that commanded the support of a majority of the Board. Each and every member's individual reasons, however, cannot be used to meet the TCA's requirements. *See Southwestern Bell,* 244 F.3d at 60 ("A written record can create difficulties in determining the rationale behind a board's decision, particularly when that record reflects arguments put forth by individual members rather than a statement of the reasons that commanded the support of a majority of the board.").

■ The proper remedy here is to remand the case to the Town for a new written decision. Nextel's requested remedy—outright reversal of the Board's decision and an order to grant the WCF permit—seems inappropriate here where the written record suggests that the majority most likely had a concern about the set-

back requirements. The Town's cross motion for summary judgment on Count I of Nextel's Complaint is *DENIED.*

### B. *Effective Prohibition*

■ In Count II, Nextel claims that the Board's denial effectively prohibits the provision of wireless services in the Town, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). The First Circuit has held that a single denial of an application can run afoul of the TCA if that denial is "shown to reflect, or represent, an effective prohibition on personal wireless service." *Town of Amherst, NH,* 173 F.3d at 14. A carrier must meet the "heavy burden" of demonstrating that a zoning authority has set out criteria or administers the criteria in such a way that towers are effectively precluded. *Id.* To establish its claim of effective prohibition, Nextel must show two elements. First, Nextel "must establish that the Town's zoning policies and decisions result in a significant gap in wireless services within the Town." *Omnipoint Communications MB Operations, LLC v. Town of Lincoln,* 107 F.Supp.2d 108, 118 (D.Mass.2000). Second, Nextel "must establish from language or circumstances not just that its application to erect a WCF to eliminate the demonstrated significant coverage gap has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Id.* (internal quotation omitted); *see also Omnipoint Communications Enter., L.P. v. Newtown Township,* 219 F.3d 240, 244 (3d Cir.2000) ("The provider's showing ... will thus have to include evidence that the area the new facility will serve is not already served by another provider.") (quoting *APT Pittsburgh Ltd. P'ship v. Penn Tp.,* 196 F.3d 469, 480 (3d Cir.1999)); *360° Communications Co. of Charlottesville v. Bd. of Supervisors of Albemarle Co.,* 211 F.3d 79, 88 (4th Cir.2000) (citing *Town of Amherst, NH,* 173 F.3d at 14); *Sprint Spectrum,*

*L.P. v. Willoth,* 176 F.3d 630, 643 (2d Cir.1999) ("once an area is sufficiently serviced by a wireless service provider, the right to deny applications becomes broader . . . .").

The signal strength maps provided in Nextel's WCF application establish a coverage gap for Nextel in the northern portion of Randolph. (Rosemark Aff.Ex. C(6)). Nextel offers four pieces of evidence which support its claim that the Bylaw restrictions are the cause of this coverage gap. First, Rosemark states that Nextel "conducted an extensive and thorough review of the area of the Town in and around its search ring and determined that no other existing building or structure would allow Nextel to deploy the antenna facilities which it needs. . . . [Nextel] also looked at various parcels in and around the search ring, but . . . determined that none of these were feasible." (Rosemark Aff. ¶¶ 15–16). Second, in its WCF application, Nextel states that it had used "due diligence and reasonable efforts to co-locate on existing facilities" but could not find a parcel that would meet all of the dimensional requirements of the Bylaw. (Rosemark Aff.Ex. C(2), p. 18). Third, Nextel's application attaches the rather summary conclusion of Colonial Surveying of Belmont, Mass., that no viable parcel exists within Nextel's search area. (*Id.* Ex. C(18), p. 2). Finally, Rosemark states that Nextel investigated seven alternative locations suggested by the Town which "[f]or various reasons" were not "feasible." (*Id.* ¶ 26).

Under the TCA, the Town has no obligation to present substantial evidence that there are alternative sites available that meet the zoning requirements. *Southwestern Bell,* 244 F.3d at 62. While Nextel has presented undisputed evidence concerning a gap in coverage, it has not met its heavy burden of proving an effective prohibition of wireless services in the Town simply by making conclusory statements that alternative locations are not feasible. For example, are there sites available which meet the zoning requirements and reduce the gap even if coverage is not perfect? On remand, the parties are ordered to make reasonable efforts to find an acceptable site. The current record is inadequate to resolve Nextel's claims that the zoning ordinances effectively prohibit Nextel from locating a tower in any viable location. *See Nextel West Corp. v. Unity Township,* 282 F.3d 257, 263–64 (3d Cir. 2002). If this case is not resolved on remand, the Court will permit rebriefing (and perhaps discovery) on the claim of effective prohibition.

### C. *Filing and Review Fees*

 Nextel challenges the $76,000 Filing and Review fees as contrary to Massachusetts law. As a threshold matter, the Town claims that Nextel lacks standing to challenge these fees because Nextel has not yet paid them. The principle of standing ensures "that legal questions are presented not abstractly, but embedded in concrete factual contexts . . . which minimize friction between courts and . . . governmental bodies by assuring that courts act only when the threat of injury to a plaintiff is real." *Ozonoff v. Berzak,* 744 F.2d 224, 227 (1st Cir.1984).

Here, the threat of injury to Nextel from the allegedly illegal fees is real because Nextel will eventually have to pay the Filing and Review Fees to build a WCF in the Town. That the Town might offer Nextel a different fee does not eliminate Nextel's standing to challenge the fee as contrary to state law. Either Nextel will be forced to pay an illegal fee or its refusal to pay might negatively affect its WCF application. Thus, Nextel meets the constitutional requirements for standing: (1) an injury; (2) a causal connection between the injury and the complained-of acts; and (3) redressability. *Id.* Nextel

also meets the "prudential considerations" for standing. It seeks to vindicate its own legal interests under a statute, Mass.Gen. Laws ch. 40, § 22F, that seeks to protect fee-payers from the imposition of excessive or inappropriate fees. *See id.* Nextel therefore has standing to challenge the Town's fee requirements.

 Nextel correctly argues that Massachusetts law restricts the amount a locality or local board may charge as a "fee" for a license or a permit. Although Massachusetts law authorizes "reasonable fees" for permits or licenses, Mass.Gen. Laws ch. 40, § 22F, such a fee is to compensate the governmental entity for the cost of providing its services, and should not be designed to raise additional revenue. *See Emerson College v. City of Boston,* 391 Mass. 415, 424–25, 462 N.E.2d 1098, 1105 (1984); *Greater Franklin Developers Ass'n, Inc. v. Town of Franklin,* 49 Mass.App.Ct. 500, 502, 730 N.E.2d 900, 902 (2000). This Court treats with deference a locality's classification of a monetary exaction as a "fee." The party challenging the fee carries the burden of proving otherwise. *See Commonwealth v. Caldwell,* 25 Mass.App.Ct. 91, 94, 515 N.E.2d 589, 592 (1987).

Regulatory fees may encompass more than just "the costs to the municipality ... which arise directly in the enforcement of the regulatory provisions themselves." *Emerson College,* 391 Mass. at 425 n. 16, 462 N.E.2d at 1105 n. 16 (quotation and citation omitted). "The license fee may properly be fixed with a view to reimbursing the city, town, or county for all expenses imposed on it by the business sought to be regulated ... [I]t is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed." *Id.* (quotation and citations omitted). At its heart,

however, a fee may only "compensate the governmental entity providing the services for its expenses." *Id.,* 391 Mass. at 425, 462 N.E.2d at 1105.

Thus, the Town's Filing Fee should reflect the Town's best estimate of the costs it will incur from the filing of a Special Permit Application for a WCF. Presumably, actual costs incurred in filing (e.g., staff members' time to process the application, costs of duplication, storage, publication of hearing notices, etc.) are modest. No town is likely to incur $38,000 in expenses from the mere filing of a WCF Special Permit Application.

The Review Fee poses a closer question, though not close enough to save the Town's fee structure. Obviously, the Town incurs expenses in the evaluation of a WCF application. These may include costs incurred in, for example, the review of the application by a town's attorney and the consultation with experts to evaluate the technical aspects of the application. Nextel argues that the Town's $38,000 Review Fee, however, substantially exceeds the amount a town may normally expect to incur in the review of a WCF Special Permit Application. The Town essentially conceded as much at its November 12, 2001 meeting, when it offered to cut the towering Review Fee in half, and determine the Filing Fee at a later time. Fees, however, cannot be set on-the-fly. *See* Mass.Gen.Laws ch. 42, § 22F ("Any municipal board ... may, from time to time, *fix* reasonable fees for permits...." (emphasis added)).

Nextel's motion for summary judgment on Count IV is *ALLOWED* with respect to the Filing and Review fees.

### D. *Fourteenth Amendment Claims*

 Nextel also claims that the two-year duration for a WCF Permit and the Filing and Review fees have "no foundation in reason and [are] a mere arbitrary

or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *South County Sand v. Town of Kingstown,* 160 F.3d 834, 836 (1st Cir.1998). Thus, says Nextel, the duration of the permit and the fees violate its Fourteenth Amendment rights to due process and equal protection.

There is no evidence that a two-year duration for a special permit constitutes an exercise of power so unreasonable or arbitrary as to have no substantial relation to the public welfare. In fact, under Massachusetts state law, the standard duration for a "special permit" may not *exceed* two years. *See* Mass.Gen.Laws ch. 40A, § 9 ("Zoning ordinances or bylaws shall provide that a special permit granted under this section shall lapse within a specified period of time, not more than two years...."). The Town's cross motion for summary judgment on Count VI of Nextel's complaint is ***ALLOWED*** with respect to the duration of the special permit.

■ Nor does Nextel establish either an equal protection or a due process violation based on the Town's excessive Review and Filing fees. With regard to Nextel's equal protection claim, "the mere fact that [a government agency] may have violated or abused ... state regulatory regimes by imposing ... an application 'fee' in excess of regulatory limits, has no direct bearing on whether [the agency] violated [the plaintiff's] equal protection rights." *Barrington Cove Ltd. Partnership v. Rhode Island Housing & Mortgage Finance Corp.,* 246 F.3d 1, 10–11 (1st Cir.2001). As for a violation of due process, "[i]t is bedrock law in this circuit ... that violations of state law—even where arbitrary, capricious, or undertaken in bad faith—do not, without more, give rise to a denial of substantive due process under the U.S. Constitution." *Coyne v. City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992).

The Town's cross motion for summary judgment on Nextel's Count IV is ***ALLOWED***.

### E. *Section 1983 Claim*

■ Finally, Nextel moves for partial summary judgment on its claim under 42 U.S.C. § 1983. Nextel asserts that the Town has violated its federal statutory rights under the TCA by denying its permit application, and its federal constitutional rights by allegedly denying its application in retaliation for Nextel's challenge to the Town's fees.

The courts of this District have split as to the availability of Section 1983 relief from a violation of the TCA. *Compare Sprint Spectrum, L.P. v. Town of Easton,* 982 F.Supp. 47, 53 (D.Mass.1997) (holding that § 1983 remedies were preserved), *with National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 122 (D.Mass.1998) (holding the contrary). This District is not the only one to struggle with this difficult issue. *See, e.g., Sprint Spectrum, L.P. v. Town of Ogunquit,* 175 F.Supp.2d 77, 92–94 (D.Me.2001) (holding § 1983 remedies not available for TCA violation); *Omnipoint Communications Enterprises, L.P. v. Zoning Hearing Bd. of Chadds Ford Township,* 1998 WL 764762, *5–*6 (E.D.Pa. Oct. 28, 1998) (§ 1983 remedies available); *Cellco Partnership v. Town Plan & Zoning Comm'n of the Town of Farmington,* 3 F.Supp.2d 178, 187 (D.Conn.1998) (§ 1983 remedies available). I find Judge Ponsor's reasoning in *National Telecommunication Advisors* to be persuasive, and adopt that reasoning here. Nextel may not recover Section 1983 damages for mere violations of the TCA.

Nextel is not now entitled to partial summary judgment on its retaliation claim either. Nextel has not, at this point, provided evidence sufficient to establish that the Board retaliated against Nextel and

deprived Nextel of a right secured by the Constitution and laws of the United States. *See Town of Easton*, 982 F.Supp. at 53. Nextel's motion for partial summary judgment on Count VI of its claim is therefore *DENIED.*

## IV. CONCLUSION AND ORDER

For the reasons stated above, Nextel is *GRANTED* summary judgment on Count IV and Count VI, insofar as they relate to the Town's fee structure. The Town is *GRANTED* summary judgment on that portion of Count IV concerning the duration of the Special Permit. All other requests for summary judgment by either side are *DENIED.* The case is remanded for further proceedings consistent with this opinion. The Court will stay the remainder of the case pending the proceedings on remand.